## Job A. Turner *vs.* Quincy Mutual Fire Insurance Company.

A mortgagor who has been insured on the mortgaged property by a policy making the amount insured payable to the mortgagee in case of loss, may, with the assent of the mortgagee, sue on the policy in his own name.

The fact that an insurance company has paid the amount of several awards as to losses made by A., to whom, as arbitrator, a person acting as their agent to receive applications for insurance, has submitted the questions, is not sufficient evidence to prove a holding out by them of such person as authorized to appoint any one other than A. as arbitrator.

Contract. The first count of the declaration was on a policy of insurance, dated November 16, 1865, by which the defendants insured the plaintiff $7000 on his building in Boston, "payable in case of loss to A. W. Benton, mortgagee." The second count was to recover the sum awarded to the plaintiff by arbitrators to whom the question of the amount payable under the policy had been referred by the parties.

At the trial in this court, before *Colt*, J., it appeared that Benton, who had a mortgage of $35,000 on the insured premises, assented to the bringing of this suit, either before or after it was brought, and the facts of the loss and the defendants' liability therefor were admitted; the only question was as to the sum for

which they were liable, and there was much conflicting evidence on the amount of the loss.

It further appeared that the loss occurred on December 9, 1868 ; that the plaintiff was insured by the defendants, the Mechanics' Mutual Insurance Company and the Union Mutual Insurance Company ; that on the next day the two last named companies and the plaintiff agreed to submit the question of the amount payable by the insurers to the arbitration of Jonas Fitch, Albert H. Kelsey and Charles J. Fox ; and that the arbitrators made the award declared on in the second count of the declaration. There was evidence tending to show that Whitcomb Porter, an agent of the defendants, acquiesced in the appointment of arbitrators which had thus been made. The defendants denied that Porter had any authority to bind them by submitting the question to such arbitration.

The evidence on the question of Porter's authority was substantially as follows :

It appeared that the defendants were incorporated in 1851, and had their principal place of business in Quincy, about ten miles from Boston ; that Porter had been a director from the beginning ; that he was by business an insurance agent, acting in 1868 for over twenty companies ; that at his office, which was at 12 Brazier's Building, 27 State Street in Boston, there was this sign : " Quincy Mutual Fire Insurance Company, W. Porter, agent ; " that for many years there was this advertisement in the Boston Directory : " Quincy Mutual Fire Insurance Company, of Quincy. Boston office, 12 Brazier's Building, 27 State Street. Agent, W. Porter ; " that there was no record of the defendants appointing Porter agent ; that before 1859 he had been appointed by the defendants one of a committee to adjust losses, and had adjusted losses ; that in 1859, when he was a member of the executive committee of the defendants' directors, Charles A. Howland, the secretary, was authorized to examine and adjust losses subject to the approval of the executive committee ; and that Porter received applications for policies, examined risks, took the policies to Quincy for execution, returned them to the applicants, and received payment of premiums.

Thomas H. Russell, the attorney for the owners of Brazier's Building, testified that the defendants were lessees of an office there; that Porter paid the rent; and that he knew of no one who attended to the defendants' business except Porter.

Albert Bowker, president of the North American Insurance Company, testified: "I have conferred with Porter in case of losses. I have named my parties, and Porter has named his, in losses on buildings. To the best of my recollection, Porter has named parties for a loss. I remember no particular loss."

Shubael G. Rogers, president of the Firemen's Insurance Company, testified that in a loss of $100 about fifteen years ago, Porter and he settled it. "My impression is Porter settled it. I do not recollect Porter's appointing any appraisers for settlement of losses. I have known no one representing the defendants except Porter."

Charles T. Powell, an insurance agent, testified: "I remember the loss of Daniel Denny. Porter came to my office. He said there had been a loss, and he or his company were going to appoint adjusters and settle the loss. I think it was Daniel Goodwin or Datus E. Poland. I assented. He has acted in the same way in other cases. They do not always employ the same parties to estimate loss. In some of the losses, I cannot give the names of those appointed. I should say that his language was as speaking for the company. He would say, ' We are going to do so and so.' ' We will put on Mr. Goodwin or Mr. Poland.' I knew no one but Porter in reporting or adjusting losses."

Solomon Hovey, president of the Mechanics' Mutual Insurance Company, testified: "I never had dealings with the Quincy office, such as examining risks and settling losses. Porter represented the company; I never knew any one else in adjusting losses." The awards of referees in losses in which the defendants and the Mechanics' Mutual Insurance Company were concerned, either with or without other companies, were then put in. There were ten of these awards, of dates from 1862 to 1868. All were signed either by Goodwin or Poland, as one of the referees, except one on a loss of S. H. Russell in 1866; and as to them the witness Hovey testified: "These papers came from my office.

know these losses were adjusted by Porter and myself. These are cases where men were appointed to adjust losses. We usually send a copy of the award to the Quincy office, and a clerk to collect arbitrators' fees. I never knew of complaints from the office of the defendants or non-payment, but in the present case." He further testified that after Kelsey and Fox were appointed, Porter agreed to their appointment, and also agreed to leave the appointment of the third arbitrator to the witness. On cross-examination, he testified : " I remember there was such a loss as Russell's, but nothing particularly. I will swear that I saw the presidents or agents of companies in that paper, and that we appointed the referees."

George G. Field, president of the Union Mutual Fire Insurance Company, testified that he had dealings with the defendants for twenty years, and never knew any one but Porter as transacting business for them in adjusting losses.

James D. K. Willis, a clerk in the Mechanics' Mutual Insurance Company, testified that it was his duty to carry awards of referees to the offices which entered into the references with the Mechanics' Mutual Insurance Company, and to collect the arbitrators' fees ; that he had often been to the office of the defendants to collect fees, which were paid by Porter ; and that he knew of no instance when any one else had dealt for that company.

Charles A. Howland, the defendants' secretary, testified that all the defendants' losses since May 1859 had been adjusted by his direction ; that he had charge of this loss ; that he knew of no other person having authority to adjust, and was not aware that Porter had adjusted losses in Boston. " Nothing since 1859 to authorize him to adjust. He is the only recognized agent in Boston. Sometimes he has paid referees' fees. I always appointed Goodwin as arbitrator, when he was in Boston. He has authority to act when appointed. If some one else appointed Goodwin, if his name were to the award, we should pay ; if any one's name were appended with his, we should not appoint. We would pay because we had confidence in his appraisal. I think that once, when Goodwin was away, I secured the services of Poland as to some awards. There is nothing to show that Porter pays referees' fees. He pays nothing without an order from me."

Whitcomb Porter testified: " To my recollection, I have not paid a loss since 1859. I have agreed on a referee on special reserve of the secretary and adjuster. To other offices I have said that when certain persons were put on a loss, the Quincy office would pay. They are Poland and Goodwin. That I considered special reserve. In the case of Daniel Denny, the loss was paid by me by order of the adjuster. I suggested the name of Goodwin by suggestion of the adjuster. I said my directions were that Goodwin should be employed on loss unpaid. I never agreed on referees, nor exercised any authority in adjusting losses beyond what I have stated, save by special direction of adjusters. I mean that, Goodwin or Poland being appointed, the company will pay. I never pay without an order. I learned of the fire two or three days after it happened. I met Mr. Hovey. He talked of referees. I said it was not my business to adjust losses of the defendants. I said if Goodwin was on we should pay. Willis brought the award the same day. I told him that I had not agreed on referees, and should not pay my share. I had no authority to agree. Goodwin was adjuster by common consent. The secretary was not the sole adjuster. Before 1859 I sometimes adjusted losses. Since 1859 Howland has given me instructions. Generally I went and agreed with Hovey on referees, but acting under special direction. I do not remember one instance when I did not go to agents and presidents and agree on referees. Had two referees. We generally had no one but those men. I generally waited for instructions. We have a general instruction."

The defendants requested the judge to rule " that the suit should have been brought by the mortgagee, and cannot be maintained by the plaintiff; that there is no evidence tending to show that Porter ever had any authority to agree to any such reference as is claimed in this case, namely, to delegate to Hovey, a stranger, the appointment or agreement for the defendants of a referee or referees ; that there is no evidence that Porter ever named a referee or referees, except under the special instruction of Howland, and then that the persons so named were either Goodwin or Poland ; " but the judge refused so to rule.

The judge instructed the jury as to the liability of the principal for the acts of the agent done within the scope of his apparent authority, to which no exceptions were taken, and by consent of parties submitted the two following questions to the jury :

" 1. Was the estimate of Kelsey, Fitch and Fox binding as an award upon an agreement made by an authorized agent of the defendants ? 2. Treating the estimate of Kelsey and others as evidence only, and not binding as an award, what damages is the plaintiff entitled to recover of the defendants ? "

The jury answered the first question in the affirmative, and in reply to the second named a sum less than the amount of the award, and returned a verdict for the amount of the award. The defendants alleged exceptions.

*W. A. Field*, for the defendants.

*A. A. Ranney*, for the plaintiff.

AMES, J. The case finds that the plaintiff was the general owner of the property insured, and was the party who applied for the insurance, paid the premium, and subscribed the deposit note. He must be considered as the person insured. *Sanford* v. *Mechanics' Insurance Co.* 12 Cush. 541. The stipulation that in case of loss the amount of indemnity that shall become due is to be paid to a mortgagee does not prevent the plaintiff from being .he party for whose benefit the insurance is to operate. *Jackson* v. *Farmers' Insurance Co.* 5 Gray, 52. Whatever may in that way be paid to his creditor, operates in effect as a payment to himself. It reduces his debt, and fulfils to that extent his obligation. It would be a payment for him and on his account, and he would have the benefit of it as much as if it were a payment directly to himself. The clause in the policy is merely a direction in advance as to the mode of payment. The decision last cited is distinct and explicit that in such a case the mortgagor, with the permission of the mortgagee, may sue upon the policy in his own name. The evidence reported is distinct that the mortgagee assented to the suit in advance or sanctioned it afterwards.

With regard to the authority of Porter to bind the defendants, oy an agreement to join in the submission of the plaintiff's claim

to the arbitration of the three persons who made the award de-
clared upon, there is more difficulty.   He was undoubtedly their
agent for some purposes, and to some extent, and the jury were
correctly instructed as to the general rules by which they were to
judge of the extent of his authority as such agent.   But it is not
claimed that he had any previous express authority from the de-
fendants to enter into this specific agreement of reference, and
the only ground upon which the defendants can be said to be
bound by his act in so doing must be that such a reference came
within the scope of the apparent authority which he had been
permitted by them to assume on their behalf, or that they assented
to the act by a subsequent ratification.   If, with their knowledge
and without objection on their part, he had acted in such a man-
ner as to lead third persons dealing with him honestly to believe
that he had such authority ; in other words, if he was held out
by the defendants as having it ; they cannot afterwards repudiate
his acts as unauthorized.   The bill of exceptions shows that he
was their Boston agent, and that, as such, he was largely em-
ployed in the preliminary arrangement of receiving applications,
and the usual and ordinary business of insurance.   But the ad-
justment and settlement of losses would be matters which would
only arise occasionally, and much less frequently.   Their business
in Boston, on such occasions, would not be so remote from their
general place of business as to make it either difficult or inconven-
ient for the directors themselves to act personally upon the sub-
ject of the adjustment of claims for losses ; and there would be
comparatively little occasion or reason for delegating full power
of action on behalf of the company, upon a matter of such im-
portance, to a local agent, at so short a distance from the central
office.

The plaintiff's evidence tended to show that Porter did take an
active part, to some extent, in the business of ascertaining and
adjusting losses, on behalf of the defendants, and that there were
instances in which he had joined, as the representative of the de-
fendants, in the selection of arbitrators to estimate the amount of
loss.   The defendants meet this evidence by saying that there
were two or three persons (Goodwin, Poland and one other) upon

whose judgment they were willing in such cases to rely, and some one of whom they were in the habit of selecting for such purposes ; and that when Porter selected for them as referee either one of those persons, they acquiesced in such selection. In all the numerous cases of this kind, in which, according to the evidence, these defendants had joined with other companies in submitting the question as to the amount of the loss by fire to referees, but one is found in which it appeared that either Goodwin or Poland was not one of the referees. But this evidence is far short of proving, and it has no tendency to prove, the broad and general authority on the part of Porter to select referees for the defendants according to his discretion, or to join with other companies in such a reference. Still less, if possible, had he any authority to delegate the selection of a referee to any other party in interest. To give to the plaintiff's evidence its broadest effect, it fails to show that in any case (with one single exception, the particular circumstances of which do not appear) the defendants have paid any loss upon an award not signed by either Poland or Goodwin ; or that they have adopted Porter's agency or confirmed his act in selecting for them any other person as referee. The adoption of a referee previously selected by other parties was not within the apparent scope of his agency.

In this view of the case, it was an error to leave it to the jury to say whether the estimate made by the three referees was binding as an award upon a submission by an authorized agent of the defendant corporation. The majority of the court are of the opinion that there is no evidence of any such authority. The result is that, unless the plaintiff will consent to reduce the verdict to the sum assessed by the jury, taking the estimate of Kelsey, Fitch and Fox as evidence only, and not as a binding award, the *Exceptions are sustained.*