## ARGUED AND DETERMINED

IN THE

# SUPREME JUDICIAL COURT

OF

# MASSACHUSETTS.

EDWARD M. WHEELER vs. WATERTOWN FIRE INSURANCE COMPANY.

Worcester. Oct. 12, 1880; March 15. — April 11, 1881. COLT, J., absent.

Evidence that the amount of the premium on a policy of insurance was paid to the insurance company by the agent who took the risk, although the agent received from the assured only part of the premium and retained the policy in his hands until the time of the loss, will warrant a finding, in an action against the company on the policy, that it was duly issued and delivered.

If, according to the terms of a policy of insurance, the representations in the application are to be regarded as warranties on the part of the assured, it is necessary, under the St. of 1864, c. 196, if the insurer proposes to rely upon them as such, that they should be stated in the body of the policy.

A policy of insurance against fire provided that it should be null and void if, without the written consent of the company first obtained, the dwelling-house insured should become vacant by the removal of the occupant. An agent of the company, who took the risk, and whose commission authorized him to issue policies, make surveys, consent to the assignment of policies, receive premiums and "attend to all other duties and business of the agency," wrote in the policy, after the house had been vacated by the tenant for several days, "permission granted to remain unoccupied until" a certain day, which was after the date of the loss; and shortly afterwards notified the company of this act, but the notice was not received until after the loss. *Held*, in an action on the policy, that the evidence warranted a finding that the agent had authority to grant such permission.

A mortgagor of buildings, the legal title to which stood in the name of his assignee in bankruptcy, and upon which there was a policy of insurance against loss by fire, payable to the mortgagee in case of loss, which provided that, "if there is other prior or subsequent insurance without written consent of the company,

this policy shall be null and void," without the knowledge or consent of his assignee or mortgagee, obtained from another company a policy on the same premises, in which he was represented to be the owner thereof and no mortgage was expressed, and which provided that, "if the interest of the assured in the property be any other than the entire, unconditional and sole ownership of the property, it must be so expressed in the policy, otherwise the policy shall be void." *Held,* in an action by the mortgagee for a loss under the first policy, that the policy obtained by the mortgagor was not "subsequent insurance," within the meaning of the policy in suit, and did not avoid it; and that, even if it were to be regarded as coming within the stipulation of the policy in suit, it would not avoid it, by reason of invalidity, in failing to state the true interest of the mortgagor in the premises.

If, after a loss under a policy of insurance against fire, the assured is induced to sign an agreement to submit the appraisal of the loss to arbitration, by the representation of the agent who took the risk that the policy requires such an appraisal, which in fact it did not require, but the representation is made without fraudulent purpose, and the assured has the opportunity to examine the policy before signing the submission, and neglects to do so, he is bound by the award made under the submission.

CONTRACT upon a policy of insurance, dated May 15, 1878, by which the defendant insured against loss or damage by fire, for one year, "A. W. Curtis, assignee of estate of Lorenzo Bemis, to the amount of three thousand dollars: $2200 on his two-story frame dwelling-house, L and wood-house attached, situate west part of Spencer, $800 on frame barn attached. Payable in case of loss to E. M. Wheeler as his mortgage interest may appear. It is understood that the property hereby insured belongs to estate of Lorenzo Bemis, bankrupt, and is insured by bankrupt for benefit of said estate." The policy contained the following provisions:

" If the assured, in the written or verbal application for insurance, makes any erroneous representation materially affecting the risk; or omits to make known any fact material to the risk; or if there is other prior or subsequent insurance without written consent of the company; or if the title to the property is transferred or changed, whether by act of the parties or by operation of law; or if the property or any part thereof shall be encumbered by mortgage, judgment or otherwise; or if the interest of the assured in the property be any other than the entire, unconditional and sole ownership, at the time of effecting such insurance, and be not so stated to the company and so expressed in the application; or if the property or any part thereof shall thereafter become so encumbered without notice

to the company and their written consent thereto obtained; or if this policy shall be assigned without written consent of the company indorsed thereon or annexed thereto; or if, without written consent of the company first had and obtained, the dwelling-house or houses hereby insured become vacant by the removal of owner or occupant; or cease to be occupied in the usual and ordinary manner that dwelling-houses are occupied; or if the building be unoccupied at the time of effecting this insurance, and not so stated to the company and so expressed in the application; or if the risk shall be increased and the company not notified, and written consent obtained thereto; or if, without written notice to this company by the assured, proceedings shall be commenced to foreclose any mortgage upon property herein insured; then, and in either of said events, this policy shall be null and void.

" It is covenanted as a condition of this contract that all statements and representations contained in any written or verbal application, survey, plan or description of the property herein insured, shall be taken and deemed warranties on the part of the assured. Which application it is hereby covenanted shall be a part of this policy and of the contract of insurance between the assured and this company."

The case was referred to an auditor, who found the following facts :

On November 20, 1876, Lorenzo Bemis, the owner in fee of a certain tract of land with the buildings thereon in Spencer, mortgaged the same to Luther Hill to secure his promissory note for $3238.98. On April 20, 1878, Hill sold and assigned this note and mortgage to the plaintiff. In April 1878, Bemis went into bankruptcy, and A. W. Curtis was appointed assignee, and the bankrupt obtained his discharge in October 1878. This real estate, as subject to said mortgage, was in the bankrupt's schedule of property. Bemis remained in possession of this real estate, taking the rents, being allowed so to do by his assignee, who had not then determined the equity of redemption to be of value.

On May 13, 1878, a policy of insurance on said buildings being about to expire, Hill arranged with Emerson Stone, an insurance agent in Spencer, to renew the insurance. Bemis was to pay the

premium, and Curtis was to take the policy, with loss payable
to the plaintiff as his mortgage interest might. appear.   Stone
was agent for the defendant to take risks and issue policies:
and blank policies signed by the president and secretary of said
company were furnished him to be countersigned by him and
issued by him as the agent of the company.   Stone viewed the
buildings and filled up the application, which was signed by
Curtis, and the policy declared on was written by Stone as
agent.   In the application and policy, the buildings insured were
represented as the property of Curtis, assignee of the estate of
Bemis.   Bemis paid said Stone part of the premium in money
and promised to pay the balance, and Stone personally credited
him said balance and accounted to the defendant for the whole
amount of the premium.   The policy remained in the hands of
Stone, the balance of the premium not having been paid in
money to him, at the time of the loss by fire.   There was no
evidence that the defendant knew how the property insured was
managed, or by whom the premium was paid, except as its agent
Stone knew it.   On these facts the auditor found that the policy
was duly issued, executed and delivered.

The application and the agent's diagram thereon, made from
his view of the premises, represented the size of the buildings
as follows: house 33 by 36, L 18 by 15, wood-house 10 by 40,
barn 30 by 36; whereas in fact the size of the buildings was as
follows: house 38 by 42½, L 24½ by 22½, wood-house 15½ by 46,
barn 33½ by 41.   The application also stated the amount of in-
cumbrance to be $2200, whereas in fact it was at the time of
insurance about $3400.   The auditor found that the above were
not such erroneous representations materially affecting the risk
as to render the policy invalid

The dwelling-house was represented in the application to be
and was in fact occupied by tenants when insured, and so con-
tinued to be occupied until December 21, 1878, when the tenants
moved out.   During the following week Bemis and men in his
employ were in the house during the daytime whitewashing
and papering the tenements in preparation for other tenants to
move in, and a fire was then and there kept in a stove, and
during the week before the loss by fire, which occurred on Jan-
uary 4, 1879, the buildings were locked and unoccupied.   On

January 1, 1879, on application of Bemis, who was in charge of the premises, Stone wrote in the body of the policy as follows: "Spencer, January 1, 1879. Permission granted to remain unoccupied until January 15, 1879." Neither the plaintiff nor the assignee had actual knowledge of the application by Bemis or of the permit.

The defendant contended that Stone was not authorized to grant said permission of vacancy; and, if he had such authority, it was only for a future vacancy, and that the policy, on January 1, 1879, had become void by the prior vacancy, and could not be revived by this act of the agent.

The auditor found that this permission by the agent on January 1, 1879, to "remain unoccupied" for a future time, if he had authority to grant it, was a waiver by the defendant of any effect upon the validity of the policy for past vacancy.

On the question of Stone's authority to grant said permission the facts were as follows: By his letter of attorney or commission, he was appointed agent "with full power to take applications, to make surveys and issue policies and consent to the transfer and assignment of policies of insurance signed by the president or vice-president and attested by the secretary of said company, insuring, against loss or damage by fire or lightning, buildings and personal property within the limits of Spencer and vicinity, to receive premiums and attend to all other duties and business of the agency, subject always to the rules and regulations of said company and to such instructions as may from time to time be given by its officers." There were no rules or regulations of said company or instructions given by its officers to Stone affecting his authority under said commission. But the company furnished him with blank policies, signed by the president and secretary, to be by him filled out, countersigned and issued to the assured; also with certain other blank forms for copies of his indorsements on policies to be sent to the company. Prior to January 1, 1879, Stone had no occasion to grant a permission of vacancy for this company, but had made various other indorsements upon policies and sent copies thereof to the company by filling out indorsement slips, such as permission for removal of goods insured, correcting mistakes,

assignments of policies, making loss payable to mortgagee, and for other insurance.

Stone sent notice of his having written said permission in the policy by mail to the defendant in a few days after January 1, 1879, but it was not received by the defendant until after the loss. The defendant proved that its usual mode of dealing or practice with other agents of this class was, upon application of the agent to the company, to send the permission of vacancy to be countersigned and annexed by the agent to the policy. Neither Stone nor the assured nor the plaintiff had knowledge of this practice of the company with its other agents. The auditor found that the permission of vacancy by Stone was duly authorized and valid.

On December 17, 1879, Bemis obtained other subsequent insurance upon the buildings, in the Prescott Insurance Company of Boston, without the written consent of the defendant, and without the knowledge or consent of the plaintiff or of Curtis, the legal title to the estate then standing in Curtis, subject to the mortgage to the plaintiff. In the policy issued by the Prescott Insurance Company, Bemis was represented to be the owner of the buildings, and no mortgage was expressed therein. The policy provided that, "If the interest of the assured in the property be any other than the entire, unconditional and sole ownership of the property, it must be so expressed in the policy; otherwise, the policy shall be void." The auditor found that this subsequent policy did not avoid the policy issued by the defendant.

There was a total loss by fire of the buildings insured on January 4, 1879. At that time the amount due on the plaintiff's mortgage was $3659.32. On April 15, 1879, the plaintiff sold the land under his mortgage and realized therefrom $553.50, leaving due on said mortgage $3164.84, being an amount greater than the whole amount of said insurance. Due notice and proof of loss was given on February 17, 1879.

On January 6, 1879, the parties made an agreement for submission to appraisers to estimate and appraise the damage or loss by the fire; and the appraisers made an award under the submission, and determined the damage at $2100. The plaintiff was induced to sign the submission by representations of

Stone and one Sherman, the agent of the defendant to adjust the loss, that the policy required such an appraisal of the loss. The policy did not so require; and Stone and Sherman did not so represent to the plaintiff with intent to defraud or deceive him, but were mistaken as to the fact. The plaintiff would not have signed the submission, if it had not been so represented to him as required by the policy. The plaintiff might have seen the policy in Stone's hands if he had so requested, but he did not examine it, nor was it exhibited to him, but he relied upon the statements of Stone and Sherman.

The auditor found that, upon these facts, the plaintiff was not bound by the award; and that he was entitled to recover $3096.80.

The case was submitted to the Superior Court on the auditor's report, all conclusions of fact to be taken as true if warranted by the facts stated, such judgment to be entered as the law and facts required. If the judgment was for the plaintiff, it was to be for the amount found by the auditor, with interest from May 14, 1880, unless the plaintiff was limited to the damages found by the appraisal, in which case judgment was to be for the amount of the appraisal, with interest from March 4, 1879.

*Wilkinson,* J. ordered judgment for the plaintiff for the amount found by the auditor, with interest; and the defendant appealed to this court.

*W. S. B. Hopkins,* for the plaintiff.

*H. B. Staples,* for the defendant.

SOULE, J. The finding that the policy was duly executed, issued and delivered was warranted by the facts stated in the auditor s report. It was immaterial to the defendant how the parties interested in the policy arranged for payment of the pre mium. All that concerned the defendant was that the premium was paid to it with the consent and in behalf of the assured. If the agent of the defendant chose to pay the amount to the defendant, giving credit for the whole or a part to Bemis or to his assignee, such payment was good against the defendant, and entitled the assured to the policy. *White* v. *Connecticut Ins. Co.* 120 Mass. 330. And if, as the auditor found, the policy remained in the hands of the agent Stone, it might well be inferred that he held it for the assured, as the payment of the

premium was evidence that the policy had been accepted. The case at bar has no likeness to that of *Markey* v. *Mutual Benefit Ins. Co.* 126 Mass. 158, relied on by the defendant, in which there was no payment of premium.

The representations in the application are, according to the terms of the policy, to be regarded as warranties on the part·of the assured. But, if the defendant proposed to rely on them as such, it was necessary, under the St. of 1864, *c.* 196, that they should be stated in the body of the policy. As they were not so stated, they fail to have any force. *Taylor* v. *Ætna Ins. Co.* 120 Mass. 254, and cases cited.

The evidence warranted a finding that the agent had author ity to permit the policy to continue in force after the house became vacant. His commission as agent authorized him to issue policies, make surveys, consent to the assignment of policies, receive premiums and " attend to all other duties and business of the agency." The policy provides that if, without the written consent of the company first obtained, the dwelling-house becomes vacant by removal of the occupant, the policy shall become void. This provision anticipates as probable a state of facts which will make it necessary for the protection of the assured that the written consent of the company to the continuance of the policy after the house became vacant should be given. The agent who issued the policy would be the person to act for the company in the premises, and it would be one of the duties and a part of the business of his agency to attend to the matter, and give or refuse the consent of the company as circumstances should seem to him to warrant. The fact that the consent was not indorsed till after the removal of the tenant had occurred is of no importance. It was within the power of the company, and of its agent in its behalf, to waive the condition, so far as it applied to the short period between the removal of the tenant and the indorsement of the consent. Otherwise, the provision would be of little value to the assured, in many instances, because he would be likely to learn that the house was vacant without having received notice that his tenant was about to leave it.

The policy obtained by Bemis from the Prescott Insurance Company for his own benefit, on his own interest in the property,

was not "prior or subsequent" insurance, within the meaning of the policy in suit, and did not avoid it. It was insurance obtained by a stranger on his own interest, and could not be controlled or prevented by the plaintiff nor by the assured in the policy sued on. *City Savings Bank* v. *Pennsylvania Ins. Co.* 122 Mass. 165. If it were to be regarded as coming within the stipulation in the policy, it would not avoid it, because the policy to Bemis was invalid because it did not state that he had not the sole, entire and unconditional ownership of the property, the legal title being in his assignee, and his interest as mortgagor being only an equitable one. Such invalid policy would not avoid a prior policy of the same assured on the same interest. *Jackson* v. *Massachusetts Ins. Co.* 23 Pick. 418. *Thomas* v. *Builders' Ins. Co.* 119 Mass. 121.

As the statement of the agent of the defendant that the policy required an appraisal of the loss by arbitrators was made without fraudulent purpose, and the plaintiff had the opportunity, if he had chosen, to examine the policy before signing the submission, and neglected to do so, we are of opinion that the submission was not entered into under a mistake of fact on the part of the plaintiff under such circumstances that he is entitled to avoid the submission, and to prove a greater loss than the arbitrators found.

The result is, that, according to the terms of the case stated, judgment must be entered for the plaintiff for the amount of the appraisal, and interest from March 4, 1879.

*Judgment accordingly.*