CALVIN H. HILL *vs.* COMMERCIAL UNION ASSURANCE COMPANY.

Worcester.    September 30, 1895. — October 17, 1895.

Present· FIELD, C. J., ALLEN, KNOWLTON, MORTON, & BARKER, JJ.

*Fire Insurance — Authority of Agent — Permit for Repairs — Increase of Risk — Evidence — Waiver.*

An agent of an insurance company, to whom the company had intrusted blank policies of the Massachusetts standard form signed by the proper officers, with authority to countersign and issue such policies, and also to grant permits for vacancies and for repairs by attaching written or printed permits to policies and sending copies thereof to the company, has no authority to bind the company by an oral agreement to grant such a permit.

If an agent of an insurance company, who has authority to grant permits for vacancies and for repairs by attaching written or printed permits to policies and sending copies thereof to the company, and who, having already granted such a permit for allowing insured premises to remain unoccupied, is told by the insured that he intends to make alterations in the premises and asked if the insurance is all right, and replies, "When the mechanics begin work we will put on a mechanic's permit," this implies that notice shall be given to the agent before the permit will be attached to the policy ; and the fact that he, as the agent also of the insured in respect to caring for the property, had the policy in his hands, is immaterial.

In an action upon a policy of insurance, the assured cannot contend that, having obtained permission to do one of the things provided against in the policy, he may do another without permission, upon the assumption that it will not change the grade of risk.

Evidence of an unaccepted offer of compromise by an agent of an insurance company sent to adjust a loss is inadmissible, in an action upon the policy, for the purpose of showing a waiver of the defence that the risk was increased without the defendant's assent.

CONTRACT, upon a policy of insurance for $2,500, issued by the defendant on December 6, 1888, for the term of five years, against loss by fire on a building of the plaintiff in Gardner.

The answer set up an increase of risk without the assent of the defendant.   Trial in the Superior Court, without a jury, before *Dewey*, J., who reported the case for the determination of this court, in substance as follows.

The building was totally destroyed by fire on February 10, 1893.   Due proof of the loss was furnished to the defendants on October 3, 1893.   The plaintiff, at the time of the fire, also held another policy on the same property issued by the Lancashire Insurance Company for the same amount.

The parties, failing to agree as to the amount of loss, by an instrument in writing submitted that question, pursuant to the terms of the policy, to three referees, who, after due proceedings had, made and published their award on June 27, 1893, wherein they determined the loss to be $5,551.

In 1892 and 1893, and prior thereto, the firm of Jewett and Chapin were engaged in Gardner in the business of insurance agents, and in that capacity during the period named acted for and represented the defendant.

They were intrusted by the defendant with blank policies, signed by the proper officers, which they countersigned and issued at their discretion, except that they did not fix the rates of premium.

They also had authority to give and attach to the policy written or printed permits, so called, in effect expressing the assent of the defendant that the building should stand unoccupied for a certain time, or that repairs, alterations, and changes be made therein, such as were going on in the building at the time of its destruction by fire, copies of the permits being always forwarded to the defendant.

In the course of business between the defendant and its said agents no distinction was made between vacancy permits and mechanic's permits, as to the authority of the agents, or as to charges to be made for the permits.   It was the practice of Jewett and Chapin, known and assented to by the defendant, not to make any extra charge for vacancy permits or mechanic's permits when the rate of premium on the policy was one per cent or more, that is, as high as in the policy in suit.

Under the last vacancy permit, which had been issued and attached to the policy by Jewett and Chapin, the building had

stood unoccupied for some little time.    It was a slate-roofed two-story wooden building, forty feet by fifty, with a basement and an attic, divided into rooms by wooden partitions.    The rooms on the first and second story were few and large, and the partitions were of lath and plaster.    Some time between January 1 and 10, 1893, the plaintiff made an oral contract with James Dean and another, contractors and builders, to change the building into a five-tenement dwelling-house, and to do all the work and provide the materials required therefor, the job to be completed by May 1, 1893.    The work began about January 20. At the time of the fire the partitions had been torn out of the attic, some of the partitions had been taken down in the first and second stories, part of the floor on the first story was removed, and four holes for chimneys had been cut through the floors of the first and second stories.    Much material derived from the work was piled in the basement or elsewhere in the building.

There was a stove in the basement with a fire in it for the benefit of the workmen laboring there.    What had been done in and about the building by the contractors, including the accumulation of waste materials, was naturally and reasonably incident to the execution of the contract in the usual manner.    It did not appear how or where in the building the fire which consumed it originated.

The judge found that, at the time of the fire, " by and with the knowledge, advice, agency, and consent of the insured the situation and circumstances affecting the risk had been so altered as to cause an increase of risk of injury or destruction of the building by fire, and this without any written or printed assent of the defendant, and without any assent by or in behalf of defendant, save as herein stated, if any."

In 1892 and 1893 Jewett and Chapin were also engaged in the real estate business, including the renting of property.    They had acted and were acting for the plaintiff, in caring for and leasing the premises in question.    Some six months before the fire the plaintiff had sent to Chapin his two insurance policies, and they continued to be in the hands of Jewett and Chapin at the time of the fire.

After the contract for changing the building was made, and before the work was begun, one Sawin, at the request of the

plaintiff, saw Chapin, and asked him if the insurance was all right, and told him they were thinking of changing or intending to change the building into tenements. Chapin replied that the policy was all right, that there was a vacancy permit on it, and further said, " When the mechanics begin work we will put on a mechanic's permit." Jewett and Chapin then had and retained the policy.

No notice was given to Jewett and Chapin that the work was begun. Chapin, in riding by the building, looked at it with the view of ascertaining the fact, but did not discover it, and there was no mechanic's permit, either written or printed, attached to the policy or otherwise issued. The agents did not know, at the time of the fire, that the work of repair or alteration had been begun.

One Brush, who was the special agent of the defendant, and one Berry, who was the special agent of the Lancashire Insurance Company, were sent to Gardner to adjust this loss.

The plaintiff offered to prove by one Heywood, for the purpose of showing a waiver by the defendant that Brush and Berry, while in Gardner soon after the fire, after having been informed by him in regard to the changes made in the building before the fire, made a proposition to pay to him as the attorney of the plaintiff $2,500 in settlement of the loss. This evidence was excluded, and the plaintiff excepted.

Upon these facts, the judge ruled that the plaintiff was not entitled to recover, and found for the defendant. If the ruling was wrong, the finding was to be set aside, and judgment entered for the plaintiff; otherwise, judgment was to be entered for the defendant.

*T. B. Dunn*, for the plaintiff.

*F. P. Goulding*, (*F. L. Dean* with him,) for the defendant.

ALLEN, J. The risk was increased under circumstances which would avoid the policy unless this defence is cut off by the acts of the defendant's agents. The agents had authority to grant permits for vacancies, and also for repairs, by attaching written or printed permits to policies and sending copies thereof to the defendant. They had already granted such a permit for allowing the building to remain unoccupied; and one of them had said to the plaintiff, " When the mechanics begin work we

will put on [to the policy] a mechanic's permit." But it was never in fact done, and the agents had not been informed and did not know that the mechanics had begun work. There is nothing to show that the agents had authority to bind the defendant by an oral agreement to grant a permit; *Parker* v. *Rochester German Ins. Co.* 162 Mass. 479, and cases cited; and moreover their promise as made implied that notice should be given to them before the permit should be attached to the policy. It was no present permit, and no agreement for a future permit, unless upon further notice. The fact that the defendant's agents, who were also agents of the plaintiff in respect to caring for and leasing the property, had the policy in their hands, is immaterial.

The plaintiff contends that adding the permit for repairs to the permit for vacancy would not change the grade of risk, and that the permit for vacancy therefore includes the permit for repairs, and that the assent of the defendant thereto is to be presumed. According to this argument, the plaintiff, on getting leave to do one of the things provided against in the policy, might do all the rest without permission. That cannot be.

The unaccepted offer of compromise creates no estoppel, and shows no waiver on the part of the defendant.

*Judgment for the defendant.*