GEORGE W. GREEN *vs.* STAR FIRE INSURANCE COMPANY.

Suffolk.    November 24, 1905. — March 2, 1906.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & SHELDON, JJ.

*Insurance*, Fire. *Agency. Practice, Civil*, Costs.

The unrestricted general agent in this Commonwealth of a fire insurance company organized under the laws of another State has authority not only to accept risks and receive proofs of loss but also to adjust and settle losses, and the company is bound by his acts although contrary to special instructions which are unknown to the insured.

The authority of an insurance broker acting for one desiring insurance may be

found to have ended when a policy for the insurance has been countersigned by the general agent of the company and has been given by him to his clerk for delivery directly to the insured to whom it subsequently is delivered without the intervention of the broker.

Where a policy of insurance against fire upon mortgaged real estate provides that it shall be payable in case of loss to the mortgagee, if an action on the policy is brought by the insured without the knowledge of the mortgagee a subsequent assent of the mortgagee is sufficient to enable the plaintiff to maintain his action. The question whether in such a case the plaintiff is entitled to costs was not raised by the record.

CONTRACT on a policy of insurance against fire for $697.67 and interest, alleged to be the amount agreed upon by the parties of a loss by fire on August 7, 1904, on a building on Ocean Avenue in the town of Revere. Writ in the Municipal Court of the City of Boston dated November 19, 1904.

On appeal to the Superior Court the case was tried before *Fox*, J., without a jury.

Frederick L. Cutting, insurance commissioner for the Commonwealth, testified that the Star Fire Insurance Company is a Kentucky corporation authorized to do business in Massachusetts. He produced from the records of his office the following documents:

" Whereas the Star Fire Insurance Company of Louisville, Kentucky, has applied for authority to transact the business of fire insurance in the Commonwealth of Massachusetts and whereas the said company has appointed Mitchell and Tyler of New York City as managers of its Eastern Department, and for the more convenient transaction of business therein has given said managers authority to appoint agents in said Commonwealth,

" Be it known to all to whom these presents shall come that the said company through its President and Secretary hereby requests and authorizes the insurance commissioner of said Commonwealth to issue agents' licenses to the appointees of said Eastern managers and hereby agrees to be bound by such actions of said managers the same as if they had been done by the officers of said company.

"Florian Cox, President.

Edward J. Watkins, Secretary.

" December 28, 1903."

" The Star Fire Insurance Company of Louisville, Kentucky. Incorporated 1903.

" Be it known that Charles F. Mitchell and William Tyler, comprising the firm of Mitchell and Tyler in the City of New York in the Borough of Manhattan in the State of New York, are appointed and by these presents duly constituted managers for the Star Fire Insurance Company of Louisville, Kentucky, for the Eastern Department of said company, comprising the following States, namely: — New York, New Jersey, Pennsylvania, Connecticut, Rhode Island, Massachusetts, New Hampshire and Maine, with full power to receive proposals for insurance against loss and damage by fire in said territory, and to appoint local agents therein, to fix rates of premium, to receive moneys for the same and to countersign, issue and renew and make endorsements upon and consent to the transfer of policies of insurance signed by the President and attested by the Secretary of said Star Fire Insurance Company, subject to the rules and regulations of said company, and duly to attend to all such lawful acts, business and instructions pertaining to said Department as may from time to time be given in charge by the undersigned officers of the Star Fire Insurance Company.

" In witness whereof these presents are signed and issued in the City of Louisville, Kentucky, this twenty-second day of December, 1903.

" The Star Fire Insurance Company,
" By Florian Cox, President.

(Corporate seal.)

"Attest:    Edward J. Watkins, Secretary."

" Office of the Star Fire Insurance Co., of Louisville, Ky.
"New York, April 27, 1904.

" To the Insurance Commissioner of Massachusetts:

" The following is a list of all persons and firms constituting the agents of this company in your State, and for whom we request licenses issued or renewed for the year beginning April 1st, 1904.

" Herewith find check in payment of three licenses at three dollars each.

" Mitchell & Tyler,
" Managers.

" Name Schedule       Residence.
" John H. Madden, 44 Kilby St., Boston and Lynn.
" Patrick H. Killdea, Leominster."

The license, number 61014, read as follows :

" Commonwealth of Massachusetts
" Insurance Department.

" Be it known unto all to whom these presents come that the Star Fire Insurance Company of Louisville, Ky., being possessed of the requisite funds and having complied with the law is authorized through licensed resident agents to transact the business of fire insurance in this Commonwealth.

" Be it also known, that John H. Madden of Boston & Lynn has duly complied with the laws relating to agents of such companies and is authorized to transact within this Commonwealth for the aforesaid company the business of fire insurance, so far as he may be legally empowered to do by the aforesaid company as its agent.

" This certificate of authority shall continue in force until the first day of April next unless sooner revoked for non-compliance with law or cancelled by the company.

" In testimony whereof, witness my hand and the seal of the Department this twenty-ninth day of April in the year nineteen hundred and four.

" Frank H. Hardison,<br>
" Deputy Insurance Commissioner."

John H. Madden testified that he was an insurance agent and had been in the business since 1891 with offices at Lynn and Boston. He was agent of the Star Fire Insurance Company in 1904 with an office at 44 Kilby Street, Boston. He received and countersigned policies of the defendant, the policies being sent to him signed by the officers. He countersigned the policy on which the present action was brought. He gave it to his clerk. After the fire the policy was brought or sent back to his office and there cancelled, and sent to the company. Later he gave the plaintiff a receipt for the policy and a memorandum.

The policy was in the Massachusetts standard form with a rider making the policy payable in case of loss "to mortgagee as interest may appear." Madden knew of the fire and one Cross had adjusted the loss on the policy before Madden gave the plaintiff the memorandum above mentioned which set forth merely the important terms of the policy. On the forenoon of the day after the fire, before Madden received the policy back from the plaintiff, he was notified by the plaintiff of the loss. The house that was burned was one of those at Revere described in the policy.

Madden notified Cross of the loss and told him to attend to it. One Robertson, a carpenter, was present with Cross in adjusting the loss. Cross later gave Madden a proof of the loss and he gave this to one Cadigan, an agent of the defendant.

After the fire Madden gave to the plaintiff a memorandum of the loss, stating it to be $697, due about October 11, 1904. He gave this to the plaintiff as a receipt for the policy which had been received by him after the fire. The amount of loss was stated in the proof of loss. The proof of loss was in the handwriting of Cross. It was a usage in the business for the adjuster or some one in his office to make out the proof of loss.

One Holden, an insurance broker, who was dead at the time of the trial, controlled the plaintiff's insurance business. He was the broker acting for the plaintiff in placing this insurance. It was he who suggested Madden's making out the memorandum. It was Holden who applied for the policy.

The premium for the policy was $75. On July 28, 1904, the plaintiff gave Madden's clerk his check for $37.50 and received from him a receipt for this as paid on the premium, stating that the balance was to be paid in September, 1904.

Madden testified that he never saw this check until the trial in the court below. It was received by his clerk and by him deposited to Madden's account as usual without his knowledge. Holden was credited with it as broker for the plaintiff.

Madden received within a day or two of its date the following letter:

"The Star Fire Insurance Company, Louisville, Ky.
" Eastern Department,
    " Mitchell & Tyler, Managers.
                "New York, June 27th, 1904.
" Mr. John H. Madden, Boston, Mass.,
    "Policy No. 500276 — Geo. W. Green — Boston, Mass.
" Dear Sir : —
    " The subject of Revere Beach was thoroughly gone into with Secretary Watkins, and notwithstanding all the persuasions which we could bring to bear upon the desirability of the business at the rate, we were still unable to impress the Company with the idea that this was good business, and as we thoroughly understand the situation now, we will avoid future friction by asking you to decline this business entirely, and relieve us of this line.
    " We regret to be obliged to take this action, as this office itself feels that the business is all right.   Your kindly attention will oblige.
                " Yours truly,
                    " Mitchell & Tyler,
                        " Managers."


This letter referred to the property on which the loss occurred.   Within a day or two after receiving this letter Madden communicated its contents to Holden and said he was sorry and told him to tell the plaintiff.   Holden told Madden a few days later and before the fire that he had told the plaintiff.   Madden never received any more money from the plaintiff after the receipt of the check above mentioned.

On redirect examination Madden said, "I note that the Massachusetts standard policy by its terms requires written notice to the assured in order to effect cancellation.   I never had any conversation about a new policy to take the place of the old.

" Green brought in the policy two or three days after the fire.   I had never seen him before, and I had not seen the policy since it was countersigned until he brought it into the office.   I did not get the policy back before the fire, though I asked for it."

The plaintiff testified as follows :

" I own the property at Revere, where the loss occurred. I insured it some time in June, 1904. Previous to the fire I got a document resembling a policy of fire insurance in Massachusetts standard form from Denney, Madden's clerk. I got this at the time when I gave the check for $37.50, namely, on July 28, 1904. I put the policy in my safe and kept it there until August 20. The fire occurred August 7, 1904. After the fire I had a talk with Holden about the balance of the insurance in which he suggested that I surrender the old policy. There having been a $700 loss there would be only $800 due if anything should happen in the future, and he suggested that I surrender that policy and take out another policy for the same amount or a larger one with that company, and he took that policy to Madden for the purpose of issuing a new policy. That was the same policy I got when I. gave the check on July 28. I met Cross and Robertson after the fire and we agreed upon $697.67 as the amount of loss. I notified Madden of the fire and Cross was notified by Madden. On the day following Cross's visit to the premises I signed and swore to the statement in Cross's office. Later I saw Madden with reference to when I might expect to get the money and he said I would have to wait about ten days till he heard from New York. About September 11, 1904, he gave me the receipt put in evidence in this case. He said he had heard nothing from the insurance company. I went to Madden again later. He said he had heard nothing from New York. At that time he gave me the copy of the policy which was produced first in evidence in this case. I was never notified, by any one of any cancellation of the policy.

" I received the bill put in evidence above from Madden. From the time when the policy was issued up to the present, Mrs. Catherine Soper Eastwood has held a mortgage on the property covered by the policy for the sum of $1,500. She did not know of the issuance of the insurance and I had no agreement with her about insurance. She executed the following paper:    .

" Know all men by these presents that I, the undersigned, hereby waive any cause of action or rights of action in favor of George W. Green for any loss on any policy of insurance issued to him by the Star Fire Insurance Company of Kentucky by reason of any interest I may have or have had as mortgagee of the property insured by said policy.

" Witness my hand and seal.

" Catherine Soper Eastwood."    (Seal.)

On cross-examination the plaintiff testified that Mrs. Eastwood had been first informed of the pendency of the present action and had given this instrument since the trial of the case in the court below.

The defendant introduced no evidence, but at the close of the plaintiff's evidence requested the judge to make among others the following rulings:

" 1. On all the evidence the plaintiff cannot recover.

" 2. Where a policy of fire insurance is payable in the event of loss to a mortgagee as his interest may appear and there is in fact at the time of the policy and of fire and of suit a mortgagee holding continuously, the assent of the mortgagee is necessary to enable the mortgagor to maintain the suit on the policy for the loss; and where such assent is given only after the institution of the action the defendant is not liable for costs.

" 3. A person appointed an insurance agent with such powers only as have been shown in this case as possessed by John H. Madden has no authority by implication of law to issue a policy upon a risk which has been declined by the company or its general agents, and it is not necessary for the insurance company to show that lack of authority was brought to the attention of the intending assured.

" 4. An insurance agent given only such powers as have been disclosed by the evidence as those possessed by John H. Madden has no authority implied in law to select an adjuster to agree on behalf of the company to the amount of the loss.

" 5. The delivery of the proof of loss to an insurance agent with only such powers as are disclosed by the evidence as possessed by John H. Madden or by Cadigan is not a delivery to the Company."

The judge refused to make any of these rulings, and the defendant excepted.

The judge, among other findings of fact, found that Madden was the only Boston agent of the defendant when this policy was issued, and as such agent had authority to write and countersign the defendant's policies.

He ruled as follows:

"I am of the opinion that the plaintiff holding the regularly executed policy of the company is not concluded by secret instructions sent by the company to its Boston agent, even if it be held that the agent violated his instructions in delivering the policy in question."

The judge found for the plaintiff in the sum of $708.12; and the defendant alleged exceptions.

*E. F. McClennen,* (*H. F. Lyman* with him,) for the defendant.
*H. Dunham,* for the plaintiff.

SHELDON, J.    The first and most important question raised by these exceptions is as to the authority of Madden, the defendant's Boston agent.    He was apparently appointed by Mitchell and Tyler, the managers of the defendant's eastern department; or rather it would be more correct to say that he is stated by Mitchell and Tyler in their letter to the insurance commissioner to be an agent of the company in this State, without any express limitation being stated to exist upon his authority, and without any statement being made of the nature or extent of that authority.    If we refer to the previous communication made to the insurance commissioner by the defendant, which appears to contain the authority under which Mitchell and Tyler acted, we find that the defendant there states that it has given to them authority " to appoint agents " in this Commonwealth, and " requests . . . the insurance commissioner . . . to issue agents' licenses to " their appointees, and agrees " to be bound by such actions of said managers the same as if they had been done by the officers of said company."

The defendant is a Kentucky corporation, though authorized and wishing to do business in this Commonwealth.    It is the case, then, of a foreign principal's appointing an agent without any statement of what his authority is, without any apparent limitation of that authority, to conduct a business which is under

the close supervision of a special department of our executive government. R. L. c. 118. *Stuart* v. *Reliance Ins. Co.* 179 Mass. 434. Here, as in that case, there is nothing to show that Madden's authority was a limited one. Moreover, it is to be borne in mind that with these facts appearing the defendant did not see fit to offer evidence that any actual limitations ever had been in fact imposed on Madden's general authority. It seems to us that under such circumstances the judge before whom this case was tried without a jury had at least a right to find that Madden was not a mere special agent of the defendant with no other powers than those proved to have been expressly given; but that he possessed a broad and general authority, sufficiently large at any rate to warrant the finding which the judge has made as to the binding force of his actions upon the defendant. He was not, as in *Lohnes* v. *Insurance Co. of North America*, 121 Mass. 439, one who merely could receive applications, take risks and settle rates of premiums, and issue policies for the defendant. He was their agent, apparently without restriction, to transact the business, which would include not only the acceptance of risks, but the adjustment and settlement of losses. *Eastern Railroad* v. *Relief Ins. Co.* 98 Mass. 420. As in the case last cited, he well might have been found to be the defendant's agent for the purpose of doing its general business in this State. Apparently he was the only man with whom the defendant's customers in this Commonwealth dealt or were expected to deal. He was not a mere broker to forward applications, as in *Commonwealth Ins. Co.* v. *Fairbank Canning Co.* 173 Mass. 161. See *Wheeler* v. *Watertown Ins. Co.* 131 Mass. 1. The limits of his authority had not been defined by any enumeration of the powers which were given to him, as in *Hill* v. *Commercial Union Assur. Co.* 164 Mass. 406; *Parker* v. *Rochester German Ins. Co.* 162 Mass. 479; *Kyte* v. *Commercial Union Assur. Co.* 144 Mass. 43; and *Harrison* v. *City Ins. Co.* 9 Allen, 231, relied on by the defendant.

It is elementary law that private instructions limiting the authority of a general agent cannot bind one who deals with him without knowledge of them. *Brown* v. *Franklin Ins. Co.* 165 Mass. 565. Madden's authority must be determined by the nature of his business and the apparent scope of his employment

therein. It cannot be narrowed by private or undisclosed instructions unless there " is something in the nature of the business or the circumstances of the case to indicate that the agent is acting under special instructions or limited powers." *Markey* v. *Mutual Benefit Ins. Co.* 103 Mass. 78, 93, quoted in *Brown* v. *Franklin Ins. Co., ubi supra.*

But the defendant argues that because Madden informed Holden, the insurance broker through whom the plaintiff's insurance was obtained, of the substance of this letter, the plaintiff was chargeable with notice of the actual limitation imposed on Madden's authority by this letter. The contention is that Holden's agency continued until its purpose was accomplished, that is, until the final contract of insurance was effected and the written policy delivered, and that knowledge of the agent gained during the continuance of the agency is imputed to his principal. It may be conceded that this language is generally accurate. But we think that it well might be found here that Holden's agency had in fact come to an end when Madden received and countersigned this policy some days before the letter in question was written; that Madden then gave it to his clerk to be delivered as it was in fact subsequently delivered to the plaintiff, and that the purpose of Holden's agency was then accomplished and his work finished. *Jones* v. *New York Ins. Co.* 168 Mass. 245. *Wheeler* v. *Watertown Ins. Co.* 131 Mass. 1. The agreement had been made, the policy prepared and countersigned, and the delivery was to be made to the plaintiff directly. The business was not all transacted between Madden and Holden, and there was nothing to indicate that the delivery of the policy was to be made to Holden, in which case the authorities cited by the defendant would have been applicable. We think that this notice was really given after his agency had been ended, as Madden knew, and cannot be regarded as notice to the plaintiff.

In our view it is not material to the decision of this case whether this policy did or did not become operative before the twenty-eighth day of July, 1904, when it actually was delivered to the plaintiff. After such delivery at any rate the defendant's right to cancel the policy depended by its terms upon the giving of a written notice to the insured and the tender to him of a rata-

ble proportion of the premium; and there is no contention that either of these conditions was complied with. R. L. c. 118, § 60, standard form of policy. *Massasoit Steam Mills* v. *Western Assur. Co.* 125 Mass. 110.

Nor does it appear that Madden had no authority to insure or to deliver the policy without payment of the full premium; and there was evidence to warrant a finding that he waived payment of the total amount of the premium in cash, and delivered the policy upon the promise of the plaintiff to pay the balance of the premium in future. *Jones* v. *New York Ins. Co.* 168 Mass. 245, 248, and cases there cited. There is no provision in the policy making actual payment of the premium in cash a condition precedent to the issuing or the taking effect of the policy, as in *Dunham* v. *Morse*, 158 Mass. 132, 134; and decisions made upon such a policy have no bearing on this case. Whether the defendant is not now entitled to credit for the remaining one half part of the premium is not before us on these exceptions; nor does it appear that such credit was not in fact given to it.

We are of opinion accordingly that the judge rightly found that the plaintiff held a policy which was properly executed and was binding upon the defendant at the time of the fire; and the defendant's exceptions bearing upon this question must be overruled.

The defendant further contends that the conditions precedent to any right of action upon this policy were not shown to have been performed by the plaintiff, first, on the ground that there was no due rendering of a proof of loss to the company, and secondly that there was no reference to arbitrators as to the amount of the loss. But both of these contentions really are disposed of by what we already have said as to the authority of Madden, and may be briefly dealt with.

Madden's authority was, as we have heretofore shown, "to conduct the business of fire insurance" in this Commonwealth for the defendant, a foreign corporation. An essential part of that business was to receive proofs of loss, to adjust any losses or cause them to be adjusted, and to agree upon the amount of such losses or, in the absence of such agreement, to act in having that amount fixed by arbitration, as provided by the terms of the policy. The evidence was that he selected the adjuster;

that the adjuster and the plaintiff agreed upon the amount of the loss, and that this agreement was ratified by Madden. It may perhaps be doubted whether there was any direct evidence that Teele or Cadigan had authority to act for the company; but the plaintiff's case rests sufficiently upon the authority of Madden, and any error, if there was one, in the findings or rulings made as to Teele or Cadigan was immaterial, and did not prejudice the defendant. See *Harnden* v. *Milwaukee Mechanics' Ins. Co.* 164 Mass. 382, 386; *Little* v. *Phœnix Ins. Co.* 123 Mass. 380. And after the amount of the loss had thus been fixed by agreement, there was nothing left for arbitration, and the stipulation therefor no longer had any force. *Wholley* v. *Western Assur. Co.* 174 Mass. 263. *Hayes* v. *Milford Ins. Co.* 170 Mass. 492.

The question whether the defendant is liable for costs in this action is not properly before us. It is argued, on a dictum of Shaw, C. J. in *Jackson* v. *Farmers' Ins. Co.* 5 Gray, 52, 57, that the defendant is not liable for costs because the mortgagee never assented to the bringing of this action, and never assented to its being prosecuted until after it had been brought and actually tried in the Municipal Court of the City of Boston. This assent was sufficient to allow the plaintiff to maintain the action. *Turner* v. *Quincy Ins. Co.* 109 Mass. 568. It may be doubted whether the question of liability for costs in such a case can be brought before us otherwise than by an appeal from the action of the clerk as to taxation under R. L. c. 203, §§ 20, 21, as in *Moore* v. *Cutter*, 3 Allen, 468. See *Coburn* v. *Whitely*, 8 Met. 272, 275. At any rate, it is not material to be considered in determining the question of the defendant's general liability in the action; and that is all that is now before us.

*Exceptions overruled.*