(Decided June 29th, 1898.)

---

## MUTUAL FIRE INSURANCE COMPANY OF BALTIMORE COUNTY *vs.* ANDERSON EICHOLTZ.

*Mutual Fire Insurance Company— Waiver of Non-payment of Premium—Authority of Agent—Estoppel—Cancellation of Policy.*

Plaintiff, a member of a mutual fire insurance company failed to pay, when due, the interest on his premium note, but afterwards paid a sum of money in renewal of the policy for the future to an agent of the company, who was also a director, and the money was paid by the agent to the company

with notice of the facts. The company had previously can-
celled plaintiff's policy by a memorandum on its books, but
no notice of the same had been given to the plaintiff and the
company retained the renewal premium until a loss occurred
when an offer was made to return it. *Held*, that the com-
pany had waived the payment of the back interest on plain-
tiff's note and was estopped to deny the authority of the
agent to renew the policy.

A by-law of a mutual fire insurance company provided that
the secretary should cancel all policies in default for two
years for non-payment of interest on the premium note.
*Held*, that a cancellation on the books of the company of a
policy in default for less than two years, without notice to
the member, is of no effect and that the subsequent acceptance
by the company of money paid to an agent in renewal of the
policy is binding on the company.

Appeal from the Superior Court of Baltimore City
(DOBLER, J.) where the case was tried before the Court
without a jury and a verdict rendered for the plaintiff.

The case was argued before McSHERRY, C. J.,
BRYAN, FOWLER, BRISCOE, ROBERTS, BOYD and
PEARCE, JJ.

*Robert F. Stanton* (with whom was *William Penrose* on
the brief), for the appellant.

*Harry M. Clabaugh, Attorney-General* (with whom was
*George R. Gaither, Jr.*, on the brief), for the appellee.

FOWLER, J., delivered the opinion of the Court.

On the 27th July, 1894, the plaintiff, Anderson Eich-
oltz, received from the defendant, the Mutual Fire Insur-
ance Company of Baltimore County, a policy of insur-
ance on his mill property located in Frederick County.
According to the terms of this policy the property there-
in mentioned was insured from the 27th July, 1894, to
the 1st of March, 1902. The consideration for this
policy was the delivery by the insured to the company
of his note for $240, together with an agreement on his

part to pay in advance the annual interest thereon before the 1st March at 12 o'clock M. in each and every year, and in default thereof the policy was not to be binding on the company "until the said interest be well and truly paid." There are many other provisions and conditions in the policy, but with the exception of the provisions in relation· to cancellation, we need not consider them in this case.

It appears that the premium note of $240 mentioned in the policy was delivered to the company and the plaintiff paid the interest thereon from the date thereof to March 1, 1895, in accordance with the provisions of the policy and the by-laws of the company, and he received from it a receipt for the amount thus paid " to insure his property "—the amount of insurance being $1,200. But the plaintiff failed to comply with the provision of the policy which required him to pay the interest on his premium note in advance on the 1st March, 1895.· He testifies that he did not hear from the company, and he allowed the interest on his premium note to run on until about March, 1896, when he went to see William Biggs, who was an agent of the company, for the purpose of paying his insurance. But not having his policy with him and failing to obtain satisfactory information from William Biggs, he departed without having effected any final arrangement or adjustment with him. Subsequently, however, he sought an interview with James S. Biggs, who was an agent, as well as a director of the insurance company. The policy was delivered by the plaintiff to the last-named Mr. Biggs, who retained it for several days or a week, and then received from the plaintiff the sum of six dollars in payment of the premium to insure the property mentioned in the policy from 1st of Aug., 1896, to the 1st of January, 1897, that is to say, for five months, the Legislature having amended the charter of the company so as to make interest or premium payable 1st January instead of 1st of.March. The premium thus paid by the plaintiff to the agent, James S. Biggs, the latter remitted to the company September 5th together with several other premiums paid by other persons, the

name of the plaintiff being distinctly set forth in the statement accompanying the remittance, as the person who had paid the sum of six dollars on account of insurance. After the payment of this premium, the plaintiff heard nothing further from the insurance company. The latter kept the plaintiff's money and never inquired of its agent why he had received it or on what account, until he informed it that the plaintiff's property had been destroyed by fire, and that it was insured by said defendant company.

The mill property of the plaintiff was destroyed by fire November 6th, 1896, but the defendant refused to pay the plaintiff's loss, and he brought suit on the policy in the Superior Court of Baltimore City. The case was tried before the Court without a jury. The verdict was for the plaintiff, and the defendant has appealed.

A number of questions were discussed, but we think the case is free from difficulty and that the judgment should be affirmed. Without stopping to consider the general question as to the power of the defendant's agents to bind it, it is sufficient to say that the plaintiff paid the sum of six dollars for insurance of his property to James S. Biggs, who it is conceded was both an agent and director of the defendant. He paid this sum of money to his principal as a premium paid by the plaintiff and so informed it by a written statement to that effect. The defendant must be held to have received this money for and on account of the plaintiff's policy, inasmuch as he was never informed to the contrary. It appears, as we have said, that subsequent to the date of the policy the company was authorized by an amendment of its charter to require all premiums or interest on premium notes, to be paid on the first of January instead of first of March, and, therefore, when the plaintiff made the adjustment with Mr. J. S. Biggs, which we have just mentioned, the latter, as testified to by the plaintiff, told him that the payment of six dollars renewed the policy—that there would be " a short assessment " and that it would run until the first of the following January. This agent and director informed the

plaintiff that by the payment of the sum mentioned the policy would be renewed, and although he contradicts the plaintiff's testimony in this respect, the plaintiff produced the following receipt which fully confirms his statement:

" Policy No. 18174.

Mut. Fire Ins. Co. of Baltimore Co.
Office 304 Lexington St., &c.

August 6th, 1896.

Received of Mr. Anderson Eicholtz six dollars, being interest on premium note of $—— from August 1st, 1896, to Jan. 1st, 1897.

J. S. BIGGS, Secretary."

It is true that the defendant subsequently attempted to repudiate this payment of premium made to it by its agent, ·director and secretary, and *after the fire* offered to return the money to the plaintiff, but he refused to accept it. Under these circumstances we think it too clear for controversy that the defendant ought not to be allowed to escape liability by any supposed want of authority of its agent to accept from the plaintiff.less than the whole amount due, nor by the fact that it had, without notice to the plaintiff, written the word " cancelled " on a copy of his policy kept in its office. Whether the agent had authority or not to accept the premium, in point of fact he did accept it and the defendant received it from him. Having failed to notify the plaintiff of its refusal to receive the premium as *paid*, it will not now be allowed to repudiate the act of its agent. To do so would be to sanction the perpetration of a fraud, though we do not wish to be understood as intimating that in this case the officers of the defendant company intended to deceive the plaintiff. Having paid his money into the hands of the company, or into the hands of one of its agents, who paid it to the company, he was justified, under all the circumstances, in assuming that it was received for the purpose for which he paid it, and that, therefore, his property was fully insured. To the company must be imputed knowledge

that the plaintiff's money was in its hands, and it was bound to know why it was paid, and if it did not intend to insure the plaintiff's property, he was entitled to prompt notice, so that he might seek protection elsewhere. In the case of the *Maryland Fire Insurance Company* v. *Gusdorf*, 43 Md. 514, it is said that the doctrine of equitable estoppel *in pais* is applicable not only to the acts, representations and omissions of agents of insurance companies which precede or attend the issuing of policies, but also to facts which " arise during the currency of the contracts, as for instance, where in case of insurance by a mutual insurance company, assessments have been made and received by the company on the premium note, or where premiums have been received after knowledge, actual or constructive, of the invalidity of the policy *ab initio*, or of a *subsequent breach* of its conditions."

But, again, it was urged that at the time of the loss the policy had been cancelled. It must be conceded, however, that this attempted cancellation was not according to the terms of the policy which provide for notice to the assured and a return of the premium note. We find no evidence that either of these requisites have been complied with by the defendant. However, the main reliance of the defendant was placed upon its supposed right of cancellation based on one of the general regulations, which is to this effect: " The Secretary is directed to cancel all policies which have been suspended and in default for two full years, computing from the first of March, for nonpayment of interest." It will be remembered that the plaintiff paid his interest in advance to March 1st, 1895, and made no other payment until Aug. 1st, 1896. Hence, according to the by-laws his policy was first in default on the former date, and it could not have been in default two full years until the first of March, 1897. But the cancellation was made, according to the testimony, between April and the middle of June, 1896, when the policy was in default only about one year and a half. Without regard to other objections, want of notice, &c., in our opinion the at-

tempted cancellation was without authority and of no effect.

What we have said disposes of the two exceptions relating to evidence, and also virtually of the exception taken to the rulings upon the prayers.

The plaintiff's first, second, third and fourth prayers are based upon and declare the propositions we have discussed, namely, that if the plaintiff paid to the agent of the defendant the sum of six dollars to insure the property in question, and that the said sum of money was transmitted to the defendant as a premium of insurance paid by the plaintiff, and that the defendant retained the same until after the fire without any further notice to the plaintiff, the Court could find a waiver of the payment of back interest, and that the policy continued in force, even though the defendant wrote the words " suspended " and " cancelled " on an office copy of the policy.   The third, fourth, fifth and sixth prayers of the defendant were properly refused.   The third attempts to give legal effect to the cancellation.   This remark also applies to the fourth prayer.   The fifth and sixth omit entirely any reference to the evidence of ratification of agents' acts, and in this respect are in conflict with the defendant's first which was granted.

*Judgment affirmed.*

(Decided June 28th, 1898.)