# TRAVELERS INSURANCE COMPANY *vs.* ANNA MELMAN.

*Insurance—Powers of Agent—Tender of Premium—Evidence—Harmless Error.*

In order to insure fair, equitable, and just dealings between insurance companies and their policy holders, the law of principal and agent must be liberally interpreted by the courts in favor of the insured, and the agent must be held to have had all the authority which it was apparent to the insured he possessed.                                                    p. 468

A tender of the amount of the first premium on a policy at the time of delivery, which tender the insurance company's agent refused, with the statement that the insured was protected, and he was good for the premium and need not be in a hurry, was a payment, for the purpose of a provision in the policy that it should not take effect until the payment of the first premium, although the policy also denied authority to any agent to waive provisions thereof.          pp. 470, 471

The erroneous exclusion of the record at a former trial of the case, sought to be introduced in order to discredit a witness by showing statements then made by her inconsistent with her testimony at the second trial, was not prejudicial, her testimony at the two trials not materially differing, and she having been cross-examined at the second trial by counsel for the appellant, with her testimony in the previous trial in his possession.                                        p. 472

*Decided February 28th, 1925.*

Appeal from the Superior Court of Baltimore City (SOLTER, J.).

Action by Anna Melman against the Travelers Insurance Company. From a judgment for plaintiff, defendant appeals. Affirmed.

The cause was argued before PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and WALSH, JJ.

*William L. Marbury,* with whom was *L. Wethered Barroll* on the brief, for the appellant.

*Albert A. Sapero* and *James T. O'Neill,* for the appellee.

DIGGES, J., delivered the opinion of the Court.

During the year 1922 Louis Bridge was employed as an insurance agent by the Travelers Insurance Company, a corporation, of Hartford, Connecticut, duly authorized to do business in the State of Maryland. This agent had authority to solicit insurance, take applications, deliver poli-

cies, and to collect first premiums. In the course of his employment he, after repeated solicitation, succeeded in obtaining an application on June 16th, 1922, from Harry Melman, whose residence and place of business was in Baltimore City, for a policy of insurance upon the life of Harry Melman in the sum of $5,000. The form of this policy was a twenty-year endowment, the beneficiary to be Anna Melman, the wife of the applicant. Subsequent to the application the applicant was duly examined and passed by the medical examiner of the company. A contract of insurance in the form applied for was duly executed by the insurance company at its home office in Hartford, Conn., sent to the general agent of the company in Baltimore, Md., and by that office turned over to Louis Bridge, the agent, for the purpose of delivery to the insured, Harry Melman, and collecting the premium due thereon. After receiving this fully executed policy from the general agent of the company, the agent, on Monday, July 17th, 1922, delivered the policy to the insured at his home, but did not actually receive the money for the first premium due on said policy at the time of delivery. The first premium due was the sum of $56.45, being the amount due quarterly as provided in the contract. On Friday, July 21st, 1922, Harry Melman, the insured, was suddenly stricken with appendicitis and immediately taken to a hospital in Baltimore City, where he was then operated on. His condition grew worse from the time of the operation, culminating in his death on Sunday, July 23rd, at about 11 o'clock A. M. On Saturday, July 22nd, while her husband was in the hospital, and after the operation, his wife, Anna Melman, the beneficiary, sent her check for $56 in payment of the premium on the policy. The check was as follows:

"Baltimore, Md., July 22, 1922, No. 738. Ades Brothers, Bankers. Pay to the order of the Travelers Insurance Company $56.00. Fifty-six 00/100 Dollars. For Harry Melman policy. Mrs. Anna Melman."

This check was deposited by the company in regular course at the Merchants National Bank, Baltimore, and duly paid by the bank upon which it was drawn. On Tuesday, July 25th, the company sent the following letter to the insured:

"July 25, 1922. Mr. Harry Melman, 2453 Druid Hill Ave., Baltimore, Md. Dear Sir: Re: Life Policy No. 828513. We are in receipt of your check this morning in the amount of $56.00. We wish to advise that the premium on the above contract is $56.45, so there is a difference due of $.45, which it will be necessary for you to let us have so that we may complete our records. Trusting you will give the above your prompt attention, I am, yours very truly, C. H. Judin, Cashier."

On the following day, July 26th, the following letter was sent by the company:

"July 26, 1922. Mrs. Anna Melman, 2453 Druid Hill Ave., Baltimore, Md. Dear Madam: I am attaching hereto our check No. 20955 dated July 26th in the amount of $56.00 representing the return of money which you tendered us under date of July 24th as an intended payment of policy No. 828513. We have no record of this policy having ever been in force and consequently there is no premium due on it. Very truly yours, C. H. Judin, Cashier."

On the following day, July 27, a second letter was sent by the company to Mrs. Melman, reading as follows:

"July 27, 1922.

"Mrs. Anna Melman,
   "2453 Druid Hill Ave.,
      "Baltimore, Md.
   "Dear Madam:
         "Re: Life Policy No. 828513.
   "I am enclosing herewith 45 cents in coin made up of one quarter, one dime and two nickels. This money was left on the counter in our office yesterday by a person who stated that he was acting as your messenger.

"At that time I informed your messenger that there was nothing due the Travelers Insurance Company from you, and we, therefore, refused to accept any moneys which you might tender us; regardless of this, your messenger walked out and left the 45 cents on our counter.

"As stated above, there is nothing due the Travelers Insurance Company from you and consequently I am returning the money herewith.

"Yours very truly,

"C. H. Judin,
"Cashier."

After the death of the insured, demand was made upon the company by Mrs. Anna Melman, the beneficiary named in the policy, for settlement, which was refused, and the non-payment of the amount stated in the policy resulted in the beneficiary (the appellee) bringing suit in the Superior Court of Baltimore City against the company to recover the amount of insurance stated in the policy, with interest. This case was tried by a court and jury and resulted in a verdict and judgment for the appellee, plaintiff below, for the sum of $5,560.  It is from that judgment this appeal is taken.

There are three exceptions contained in the record: the first to the court's ruling in rejecting four prayers offered by the appellant at the close of the testimony offered on behalf of the plaintiff, the object of these prayers being to have the court direct a verdict for the defendant.  These same prayers were again offered by the appellant at the conclusion of the whole testimony. together with two other prayers, designated defendant's fifth and sixth prayers; and at the same time the defendant moved to strike out all testimony which was admitted subject to exception relating to statements made by Louis Bridge to Harry Melman and any agreement made by said Bridge that said policy should be in force before payment of first premium.  The lower court again refused the defendant's reoffered first, second, third and fourth prayers, granted the defendant's fifth

prayer, refused the defendant's sixth prayer, and overruled the defendant's motion to strike out the testimony; and these rulings constitute the third bill of exception. As stated, the first four prayers of the defendant were re-offered and were embraced in the third exception; therefore it becomes unnecessary to consider the first exception to the ruling of the court in rejecting these same prayers. The second exception is to the ruling of the court on the evidence.

. The record discloses that the application for insurance contained the following: "That every declaration hereinabove contained is true; and that the contract issued hereupon shall not take effect unless the first premium shall be actually paid while I am in good health"; that the entire application was inserted in and formed a part of the executed policy; that among other provisions of the policy was, under the subhead "Modifications, etc.," the following:

> "No agent can make, alter or discharge this contract or extend the time for payment of premiums, nor can this contract be varied or altered or its conditions waived or extended in any respect, except by the written agreement of the company, in compliance with the law of the state in which the contract is issued, signed by the President, or one of the Vice-Presidents or Secretaries, whose authority will not be delegated."

The last above quoted provision was contained in the executed policy, but was not in the application. The record further discloses that it was the common practice of the company to execute policies for prospective purchasers of insurance, made out in their name, and deliver said policies to the agents of the company who had solicited such insurance, with the authority to the agent to deliver the policy to the insured for inspection, provided the agent took from the insured what is called a policy inspection receipt, the form of which receipt is:

"Policy Inspection Receipt.
          "Life Department, ........19

    "Received of........, agent, of the Travelers In-
surance Company, Hartford, Connecticut, Policy No.
......, upon my life, for inspection only. This pol-
icy shall not take effect or be in any way binding
upon the company until the premium thereof is act-
ually paid while I am in good health, and this receipt
exchanged for the premium receipt signed and coun-
tersigned as provided in the policy. * * * ."

There is no dispute that Harry Melman made application
to the appellant through its agent, Bridge, for a twenty-
year endowment policy in the sum of $5,000; that this pol-
icy was executed by the company, delivered to its agent
Bridge, and by him delivered to Harry Melman on Mon-
day, July 17th, 1922. What occurred at the time of deliv-
ery and subsequent thereto is the subject of conflicting and
directly contradictory testimony as adduced in behalf of
the appellee and appellant respectively. According to the
appellee's witnesses, at the time of the delivery of this
policy to Harry Melman by the agent Bridge, Melman had
money sufficient to pay the premium, offered to do so by put-
ting his hand in his pocket and saying "I will pay it," and
was told by the agent, "You need not hurry; you are pro-
tected; you stand good for it." This was the testimony of
the appellee, and the daughter of the appellee testified that
she saw Mr. Bridge talk to her father: "I only heard one
conversation, that is, my father going to pay Mr. Bridge
and Mr. Bridge said he was all right and he should not
hurry about paying him for the policy." Another witness,
the brother of the appellee, testified that on the evening the
insured was taken to the hospital the agent Bridge and the
witness went to the hospital together on a street car, and
that on the street car the agent Bridge said to the witness
"that he (the agent) insured my brother-in-law lately and
mentioned that he did not pay him yet, but he wanted to
pay him when he delivered the policy to him, but you know
your brother-in-law is good for the money; that's what I

told him; he is insured and he is protected." The agent
Bridge positively denies what was testified to by the wit-
nesses above quoted, and his version of what took place was
that when he delivered the policy to Harry Melman on Mon-
day he had Melman sign the usual form of policy inspec-
tion receipt, in which said receipt there was a provision
that the policy was not to be binding upon the company
until the first premium had been paid by the insured while
in good health. The record further discloses that on Sat-
urday, July 22nd, after Melman had been operated upon at
the hospital, the agent Bridge went to the home of the
appellee and succeeded in getting in his possession the policy
of insurance. The means by which he secured the policy is
also the subject of conflicting testimony; the testimony on
behalf of the appellee being that he received the policy from
the brother of the appellee, to whom it had been deliverd by
her for safekeeping, by the use of deception, in that the agent
asked to be given the policy for the purpose of reading it,
which was done, and while the brother of the appellee left
the room to answer a call of his mother, the agent disap-
peared taking the policy with him; while the testimony of
the agent Bridge is that, upon his visit to the home of the
appellee on that day, he told the brother of the appellee that
the policy was void and of no effect because the first pre-
mium had not been paid while Melman was in good health,
and that thereupon the policy was voluntarily handed over
to him, and that when he got the policy he destroyed the
policy inspection receipt which he had previously taken from
Melman. Which of the conflicting statements by the wit-
nesses was the truth was a question which the jury was
called upon to decide, and from their verdict it is evident
that they saw fit to believe the plaintiff's version of what
occurred at the time of the delivery of the policy to Melman
and the repossession of it by the agent of the company.

For the purposes of this appeal this Court is bound to
assume as correct the questions of fact submitted to and
decided by the jury. This being true, it presents the legal
proposition as to whether or not such a case as made out by

these facts is one in which the settled rules and principles of law would prevent a recovery.

We must leave out of consideration the question of whether the agent took from Melman a policy inspection receipt, for the reason that evidence on that point was submitted to the jury and they found adversely to the contention of the appellant. We then have the following facts proven or established for the purposes of this case in this Court: that the agent of an insurance company, authorized to solicit insurance, take applications, deliver policies and collect premiums, took an application from the appellee's decedent; that on Monday, Juy 17th, 1922, this agent delivered to the insured a policy of insurance fully and completely executed by the company, at which time an offer to pay or tender of the premium was made by the deceased and not accepted by the agent; that the deceased kept possession of the policy (nothing further in regard to the payment of the premium being done) until he was taken to the hospital, and that the premium was never actually paid while the deceased was in good health; that the application contained a provision that the policy should not be binding upon the company until the first premium was actually paid while the insured was in good health, and that the same provision was in the policy by reason of the application being inserted in and made a part of the policy; that the policy contained the usual clause prohibiting or denying authority to the agent to change or waive any provisions of the policy; that the premium was paid by the beneficiary named in the policy (the appellee here) after the insured had been operated on and was not in good health, and was returned by the company, denying liability, promptly upon its learning that the insured was not in good health, and was, in fact, then dead.

Does the law, under such circumstances, prevent a recovery on the part of the appellee? The lower court was of the opinion that it does not, and we do not find any error in the court's decision on that point. The counsel for the appellant in his brief states that he has found no decision of this Court directly on the point involved, and after diligent

search we have been unable to find such a decision, although there are several in which this Court has indicated its view under similar circumstances.    It is to be remembered that insurance companies must of necessity deal with the public in the transaction of the business in which they are engaged entirely through agents, and perhaps in a majority of cases through subordinate agents, certainly seldom with the principal officers of the company, and slightly less seldom with general managers or general agents.    The subordinate agents thus dealing with the public are selected by the insurance companies, and by their actions must be held to bind their principals not only within the scope of their real and actual authority, but also within the scope of their apparent authority.    The enormous volume and variety of business engaged in by insurance companies at the present time, of necessity, requires them through their agents to deal with people of every condition and walk of life, many of them uneducated and illiterate; and when an insurance agent solicits a contract of insurance from a prospective purchaser, he frequently has to explain, during the course of his negotiations, what insurance is, what the purpose of the contract is, what protection it affords to the insured and his family in case of death, the amount of and when the premiums are to be paid, and to impart much other information concerning the contract, in order that the prospective purchaser may understand and appreciate the benefits to be derived from a policy of insurance.    The insured rarely comes in contact with any officer or high official of the company, and can only know what the company proposes, and what he himself is to do, by reason of what he is told by the agent.    It is therefore necessary, in order to insure fair, equitable, and just dealings between insurance companies and their policy holders, that the law of principal and agent be liberally interpreted by the courts in favor of the insured, and that the agent be held to have had all of the authority which it was apparent to the insured he possessed.    In the case of *Mallette v. British Assurance Co.,* 91 Md. 471, Judge Pearce, speaking for the Court,

quoted with approval what was said in *Alexander v. Continental Insurance Co.*, 67 Wis. 427. In that case a premium note was payable in annual instalments and the policy provided that the liability of the company should cease upon failure to pay any instalment. The agent agreed to give notice to the insured fifteen days before the instalment became due, but failed to do so, and before the policy expired, and while instalments were overdue and unpaid, a loss occurred, and it was held that the condition as to the termination of liability had been waived and that the insured did not forfeit her rights under the policy by neglecting to pay instalments as they fell due. The Court said: "This rule is absolutely necessary for the protection of the insured. The insured deals with no one but the agent. The company cannot deal with its patrons in any other way. Justice and law therefore require that the company shall be held to sanction what the agent agrees to and upon which the insured relies. To allow the company to enforce a condition or forfeiture of the policy for neglect to do that which the agent informs the assured shall not avoid the policy, would work the greatest injustice." The same principle was reaffirmed by this Court in *Goebel v. German-American Insurance Co.*, 127 Md. at page 427. In *Hartford Fire Insurance Co. v. Keating*, 86 Md. 131, it was held that a clause in a policy providing that no agent shall have power to waive any of its conditions, except such as by its terms may be endorsed thereon, does not apply to conditions relating to the inception of the contract, but operates to prevent agents from modifying the terms of the policy after it has been issued. In *Mutual Fire Insurance Co. v. Eicholst*, 88 Md. 92, the acceptance of part of the premium was held a waiver of non-payment of the residue. It is contended that this principle does not apply in the present case, because the non-waiver provision, while not contained in the application, was in the policy, and that the insured had possession of the policy four or five days and should be charged with all that a reading of the policy would disclose; and in addition thereto, the application contained the provision that

the policy was not to be binding until the premium had been paid while the insured was in good health. Even if this be true, which we are not hereby to be understood as deciding, its decision is not controlling in this case in the view that we take of it. The question, as we view it, is not whether the agent under the circumstances and conditions surrounding this case had authority to waive the condition of prepayment of premium, but the real and decisive question is whether the tender of the amount necessary to pay the premium by the insured to the agent at the time of delivery of the policy (the fact of such tender having been decided by the jury and not now being open for consideration by us) constituted a payment of the premium. In *May on Insurance* (4th Ed.), vol. 2, sec. 345, the author states: "The tender of payment will be equivalent to the actual payment in its effect upon the obligations of the policy"; citing *New York Life Insurance Co. v. Clopton,* 7 Bush (Ky.), 179; *New York Central Insurance Co. v. National Prot. Insurance Co.,* 20 Barbour (N. Y.), 469. The same author, in section 345 of the volume referred to, says: "Tender is, of course, sufficient to avoid forfeiture, if in proper time and form."

We think the delivery of the policy to the insured, together with tender of the amount of the premium to the agent by the insured, which was refused by him with the statement that the insured was protected, and that he was good for the premium and need not be in a hurry, was such payment to the agent as would render the policy enforceable. If the insured had tendered the payment to the general manager of this company in Baltimore City and had been told by that official what he was told by the agent in this case, there can be no doubt that the policy would have from that time been in force; not because the official had the authority to waive provisions of the policy, but because such tender would have constituted payment to the company. We therefore hold that the tender to the agent, under such circumstances as are shown in this case, constitutes payment. In 25 *Cyc.* 725, under the subhead "Necessity of prepayment

of premiums," it is said: "A tender is a sufficient compliance with the condition that the first premium must be paid before policies shall take effect"; citing *Mutual Benefit Life Ins. Co., 58 S. C. 201.*

The appellant argues that this case furnishes a striking illustration of the danger which would be involved in allowing careful provisions of the application, policy, and inspection receipt to be nullified by mere oral testimony. We cannot assent to this conclusion, for the reason that had the agent retained the policy inspection receipt, which he claims to have taken from the insured, it would have been a complete defense to any oral testimony as to a waiver of the condition of the policy by the agent as to the payment of the premium.

The defendant's first, second, third, and fourth prayers entirely ignore the evidence in respect to tender of the premium at the time of the delivery of the policy, and in view of what we have said, were properly refused.

The defendant's fifth prayer, which was granted, instructed the jury that the plaintiff is not entitled to recover in this case and their verdict must be for the defendant unless the jury believe from the evidence that the deceased, Harry Melman, tendered payment of $56.45 to Louis Bridge, solicitor of the defendant, and Bridge refused to accept the money; while the defendant's sixth prayer was inconsistent with the defendant's granted fifth prayer, in that it sought to have the jury instructed that their verdict should be for the defendant, even though the jury should believe that the deceased, Harry Melman, offered to pay the first premium before his illness and the said agent Bridge refused to accept the payment of said premium. The sixth prayer was in conflict with the granted fifth prayer offered by the defendant and therefore was properly refused. In view of what we have said in reference to tender, the motion by the defendant to strike out the testimony of statements made by Louis Bridge to Harry Melman relating to the question of tender and the offer to pay the premium at the time of the delivery of the policy, was properly overruled.

The basis of the second exception is the action of the court in refusing to allow the defendant to introduce into evidence the record made at the former trial of this case containing a portion of the testimony of the plaintiff. The object of this offer was to discredit the witness by showing that she had made inconsistent and different statements at a former trial from the testimony by her in the present case. This record was admissible for the purpose indicated, but what it contained is set out in the record of this case, and we are of the opinion, after careful examination, that its exclusion by the lower court resulted in no injury to the defendant. The testimony of the appellee as given by her at the prior trial, in our opinion, does not materially differ from that given by her at the trial of the present case. She was cross-examined by counsel for the appellant, with knowledge of her previous testimony in his possession, and the jury had the benefit of any discrepancies shown which might tend to affect her credibility.

Finding no reversible error in any of the rulings of the lower court, the judgment will be affirmed.

*Judgment affirmed, with costs.*