AMERICAN CASUALTY CO. *v.* CHARLES T. RICAS

[No. 6, October Term, 1941.]

*Decided November 5th, 1941.*

The cause was argued before BOND, C. J., SLOAN, JOHNSON, DELAPLAINE, COLLINS, FORSYTHE, and MARBURY, JJ.·

*Foster H. Fanseen* and *John Grayson Turnbull*, with whom was *Milton I. Vogelhut* on the brief, for the appellant.

*John P. Kelly* and *Carroll W. Royston* with whom was *Charles J. Hessian* on the brief, for the appellee.

FORSYTHE, J., delivered the opinion of the Court.

The appeal in this case is from a decree of the Circuit Court for Baltimore County decreeing that a policy of

insurance issued on June 23rd, 1938, by the appellant, the American Casualty Company of Reading, Pennsylvania, a corporation, to the appellee, Charles T. Ricas, be reformed so that the said policy became effective from June 15th, 1938.

From the record, it appears that on June 15th, 1938, the appellee Ricas, having purchased an automobile, called his friend Samuel Wormser, who had written life insurance for him, and asked him to secure two policies of insurance, one covering fire and theft, and one covering property damage and public liability. Wormser immediately called up the Insurance Service Corporation, and placed with it an application for the two policies. The Insurance Service Corporation was the agent in Baltimore for a number of insurance companies, one of which was the appellant. The Insurance Service Corporation, through a Miss Belle T. Ziff, who was the secretary of the corporation, placed the application for the fire and theft policy with the Insurance Company of the State of Pennsylvania, and a policy was issued effective as of June 15th, 1938. On the same day, June 15th, 1938, Miss Ziff informed Wormser that the application for the property damage and public liability policy would be submitted to the appellant, the American Casualty Company, for its approval and that the acceptance of the policy would depend upon an investigation which would have to be made because the business in which the appellee was engaged, that of conducting a lunch room, was on the prohibitive list, and a policy could not be issued without the approval of the company. Wormser admitted he had been told that the acceptance of the risk depended upon an investigation, but he did not inform Ricas that his application had not, at that time, been accepted, but left him under the impression the policy had been issued, and he was insured.

On June 15th, Miss Ziff submitted the appellee's application to the appellant in a letter in which she asked the company "to rush" approval. The appellant, in a letter dated June 17th, acknowledged receipt of the application,

and said, "in view of the occupation of this risk we are arranging to have this line inspected and just as soon as same has been completed we shall be pleased to advise as to the acceptance of the line, thanking you to mark your records accordingly." On the same day the above letter was written, the appellee had an accident in which the automobile sought to be covered was involved. But it does not appear in the record that the appellant had notice of that accident.

When this case was heard below, practically all the facts were admitted, and the only disputed question was whether Wormser, at the time the application was secured, and also at the time the policy was issued, was an agent of the appellant with authority, either express, or implied, to make a contract of insurance binding upon the appellant. And that is the only question raised on this appeal.

The evidence upon which that question must be determined is found, principally, in the testimony of Wormser, and of Miss Ziff. In this testimony, it appears, Wormser had a rather vague idea of his exact status in the insurance business. He was a life insurance solicitor, and, from time to time, submitted applications to agents of insurance companies for other kinds of insurance. On direct examination Wormser testified he was the agent of the appellant, and had submitted a number of applications to it through Miss Ziff. But later in his testimony, Wormser admitted that he was an "independent solicitor," and placed his business through agents of various companies; that he had no "contract of employment" with the appellant, or with any other companies; that when he turned in an application for insurance to an agent, that agent was at liberty to place it with any company represented by the agent; that he never knew with which companies his applications would be placed. Also, Wormser testified he "never had anything but a solicitor's license." The record discloses that at the time he gave the appellee's application to the Insurance Service Corporation, he had no license of any kind.

Courts everywhere have carefully considered various transactions between insurance companies and the public, and have fixed by settled rules of law, the respective rights, powers, authority and liabilities of all who in any way are connected with the business, whether principal, agent, broker or solicitor. The first uniform rule is that whether an agency in fact has been created, is to be determined by the relations of the parties as they exist under their agreements, or acts. The question ultimately is one of intention. 2 *Am. Jur.*, sec. 24, p. 26, *Restatement (Agency)* sec. 8. Authorities everywhere agree that an insurance agent, so far as the insurer is concerned, is a person expressly or impliedly authorized to represent it in dealing with third parties in matters relating to insurance, and an insurance solicitor, or broker, is one who acts as a middle man between the assured and the insurer, and who solicits insurance from the public under no employment from any special company, but having secured an order, either places the insurance with a company selected by the assured, or in the absence of any selection by him, then with a company selected by the broker. Ordinarily, the relation between the insured and the broker is that between principal and agent. An insurance broker is ordinarily employed by a person seeking insurance, and when so employed, is to be distinguished from ordinary insurance agent, who is employed by insurance companies to solicit and write insurance by, and in the company. 29 *Am Jur.* sec. 86, p. 110; *Cyclopedia of Insurance Law, Crouch* Vol. 2, p. 1298; *Gay v. Lavinia State Bank,* 61 Mont. 449, 202 P. 753, 18 A. L. R. 1204; *Arff v. Star Fire Ins. Co.,* 125 N. Y. 57, 25 N. E. 1073, 10 L. R. A. 609, 21 Am. St. Rep. 721; *Pacific Fire Ins. Co. v. Bowers,* 163 Va. 349, 175 S. E. 763; *Abuc Trading & Sales Corp. v. Jennings,* 151 Md. 392, 410, 135 A. 166.

In this case the fact is clearly established by Wormser's own testimony, that at the time he placed the appellee's application with the Insurance Service Corporation, he was not a duly selected, or appointed, agent of the appel-

lant. From all the facts as disclosed in the record, and in accordance with the rules as above stated, it is clear the legal conclusion must be, that Wormser, at that time, was acting not as an agent of the appellant, but was acting solely in his capacity as an independent insurance solicitor. The fact that he secured a policy of insurance through an agent of the appellant, in no wise made him its agent. If he was the agent of anyone it would seem that he was the agent of the appellee. *Deane v. American Glue Co.*, 220 Mass. 459, 86 N. E. 890; *Commonwealth Mut. Fire Ins. Co. v. Fairbanks Canning Co.*, 173 Mass. 161, 53, N. E. 373; *Green v. Star Fire Ins. Co.*, 190 Mass. 586, 77 N. E. 649.

In *American Fire Ins. Co. v. Brooks*, 83 Md. 22, 34 A. 373, 375, this Court said, "It appears to be well settled that, where one employs another to procure insurance, the person so employed is the agent of the insured, and not of the insurer, in all matters connected with such procurement. * * * This rule applies to cases where the insurance has been effected through the medium of a broker, although the broker may have solicited the insured to take out the policy. Such solicitations only cannot constitute the broker the agent of the insurer, so as to bind the latter for the acts, declarations, or omissions of the former." *Sheridan v. Massachusetts F. & M. Ins. Co.*, 233 Mass. 479, 124 N. E. 249.

It was contended on the part of the appellee in this case, and so held by the lower court, that the appellant is bound under the policy issued on June 23rd, 1938, because it permitted Wormser to act, as its agent, with apparent authority. In support of that contention appellee relied upon the opinion of this Court in *Travelers' Ins. Co. v. Melman*, 147 Md. 459, 128 A. 125, 126. But in that case the Court was dealing with facts entirely different from those in this case. There the agent "was employed as an insurance agent by the Travelers Insurance Company." Here Wormser was not employed by the appellant, and did not solicit the policy for the appellant, or for any particular company. The mere fact that he submitted

an application to an agent of the appellant, in no wise made him its agent, actual or ostensible.

In dealing with the question of the authority of a soliciting agent, in *North American Accident Insurance Co. v. Plummer,* 167 Md. 670, 176 A. 466, 471, this Court said, "Since the acts of the soliciting agent, Hall, upon which the plaintiff's right of action depends, were not in pursuance of any express or implied power as agent of the insurance carrier, the policy was, under the circumstances of this record, not in force at the happening of the accident to the assured."

In reference to apparent authority of agents this Court has held that "as between the principal and third persons the mutual rights and liabilities are governed by the apparent scope of the agent's authority, which is that authority, which the principal has held the agent out as possessing or which he has permitted the agent to represent that he possesses." *Brager v. Levy,* 122 Md. 554, 90 A. 102, 104. Also, a third person cannot hold the principal liable on the basis of apparent authority unless the acts and conduct of the principal which justify the inference of agency are know to, and relied upon by him. *Churchville Circuit of M. E. Church v. MacNabb,* 145 Md. 105, 112, 125 A. 526; *Abuc Trading & Sales Co. v. Jennings, supra.*

It must be observed that the rule in reference to apparent authority has not been confined to dealings with agents, and not with independent solicitors, or brokers. There is no evidence in this case that the appellee had knowledge of any conduct on the part of the appellant, which, in anywise, could have led anyone to believe Wormser had any authority to solicit insurance for the appellant, nor that the appellee, when he gave the order to Wormser, relied upon any actual or apparent authority lodged in him. Wormser never held himself out as the agent of the appellant, or of any particular company.

The appellant, after investigation, notified its agent, the Insurance Service Corporation, that the Ricas policy could be issued as of June 23rd, 1938, "if still desired."

634

Insurance companies have a legal right to fix the terms and duration of policies issued by them, and they are not compelled to accept every application presented, and may stipulate upon what terms and for what period of time the risk will be accepted. Of course, any change in terms, or time, from the application must be accepted by the insured, otherwise the policy would not become effective. The insured has a perfect right to refuse a policy not in accordance with his application. A contract of insurance must be assented to by both parties, either in person, or by their agents. The policy in this case was accepted after it was known that it would become effective on June 23rd, 1938. One of the essential terms of an insurance policy is the time of commencement, and the period of risk undertaken by the insurer, and unless otherwise stated in the policy, or a contrary intention on the part of both the insurer and the insured is shown, a contract of insurance is deemed to have been made as of its date, and takes effect therefrom. 29 *Am. Jur.* sec. 132, p. 148, 149, sec. 219, p. 225; 32 *C. J.* p. 1124, sec. 227, and notes cited.

Insurance policies are no different from any other contract when the rules of law governing the reformation of written agreements are to be applied. To justify the reformation of an insurance policy a proper case must be presented, and it is necessary that it appear, by appropriate proof, that a valid agreement exists, and that by reason of fraud, or by mutual mistake on the part of both parties to the agreement, it does not conform to the actual agreement of the parties. 32 *C. J.* sec. 247. p. 1140.

In this case there was no mutual mistake as to the date on which the policy was to become effective. The appellant had not agreed that it should be the date stipulated in the appellee's application, but had expressly declined to accept the risk before June 23rd, 1938. The appellee accepted the policy to become effective on June 23rd, although the accident had occurred prior to that date.

The proof in this case fails to show that the appellee dealt with Wormser in reliance upon any apparent authority as the agent of the appellant. But it does show he did not deal with him as an agent of appellant, but as an independent solicitor.

For the reasons above stated the decree appealed from must be reversed, and the bill of complaint dismissed.

> *Decree reversed, bill of complaint dismissed. Appellee to pay the costs above and below.*