HANKINS ET AL. *v.* PUBLIC SERVICE
MUTUAL INSURANCE CO.

[No. 59, October Term, 1948.]

*Decided January 13, 1949.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, and HENDERSON, JJ.

*Hyman Ginsberg* and *Harry Leeward Katz,* with whom were *Ginsberg & Ginsberg* on the brief, for Hamer, one of the appellants.

*Louis M. Stauss* for Hankins, one of the appellants.

*Harrison L. Winter* and *Benjamin C. Howard,* with whom were *Miles, Walsh, O'Brien & Morris* and *Richard E. Lankford* on the brief, for the appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal by James Edward Hankins and Ralph A. Hamer, appellants, from a declaratory judgment declaring Public Service Mutual Insurance Company, appellee, not liable, under a certain policy of liability insurance issued by the appellee, by reason of an automobile accident on August 26, 1946.

On February 16, 1945, the appellee issued to the appellant, James E. Hankins, a policy of insurance from February 13, 1945, designated as a non-assessable participating national standard automobile liability policy. The effective term of this policy was one year which was extended for an additional year to February 13, 1947. The policy in effect was an agreement on the part of the appellee to pay on behalf of Hankins all sums for which he might become obligated to pay as damages for personal injury, death and property damage arising out of the ownership, maintenance or use of his automobile. The policy contained the provision that there would be no liability on the part of the appellee unless, as a condition precedent thereto, Hankins should have fully complied with all the terms of the policy. The policy also contained the provision "when an accident occurs written notice shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable". On the reverse side of the policy was also the following: "IMPORTANT—Every Accident, HOWEVER SLIGHT, MUST IMMEDIATELY Be Reported To The Home Office Of The Company".

On August 26, 1946, the son of Hankins, while driving his father's automobile, was involved in an accident wherein the son of Ralph A. Hamer was injured. Hankins' son stopped, rendered aid and when the Hamer child had been sent to the hospital, went home and reported to Hankins what had happened. Hankins told his son to go and report the accident to the police and also to Mr. Harry O. Webster, the agent of the appellee at Linthicum Heights, from whom Hankins had bought the policy. The son reported the accident to the Ferndale Police Sta-

tion, then went immediately to Mr. Webster's office, which is in his home, and then and there filled out a form reporting the accident. This form was attached to an identification card. This identification card set forth the offices in Maryland equipped to render claim service. The offices mentioned were in Salisbury, Hagerstown, Cumberland and Baltimore. The identification card was given to Hankins by the appellee when the policy was written. Hankins, Jr., left the report with Webster and Webster told him he would take care of it from thereon. The Chancellor found that the Hankins boy then "went on his way, believing he had done everything he, or his father, were required to do". The report, however, did not reach appellee's branch office in Baltimore until October 10, 1946.

On the following day, October 11, 1946, the appellee received from an attorney a carbon copy of a letter written to Hankins, the assured, on October 10, 1946, advising Hankins that he represented the parents of the Hamer child.

On October 17, 1946, the appellee wrote a letter to Hankins reserving its rights under the policy of insurance because of his alleged failure to notify the appellee promptly of the happening of the accident. On March 26, 1947, suits for damages were filed against the appellant, Hankins, and his son by the Hamer child and his father. When the writs were served the insured and his son immediately took the copies of the declarations to Webster and he transmitted them to the appellee. On April 24, 1947, the appellee wrote Hankins and his son asking them to come to its office in Baltimore on April 28, 1947, with which request the Hankins complied. At appellee's office the Hankins executed a non-waiver agreement which provided that the appellee might defend the suits without waiving any "provision, term, condition or limitation in the policy contained", but without requiring the appellee to defend. Appearances were then entered in the damage suits by appellee's attorneys who filed the pleas. On December 3, 1947, this suit for a de-

claratory judgment was filed by the appellee. On December 31, 1947, Hamer filed a petition to intervene in the suit for a declaratory judgment and this leave was granted. Answers were promptly filed by Hankins and Hamer and a hearing held in open court. From the judgment holding the appellee not liable on the liability insurance policy in question, the appellants appeal here.

During the trial of this case the manager of the Baltimore branch office of the appellee testified that the appellee operates through agents who are licensed to do business in the State of Maryland by the Maryland Insurance Department. If a person agrees to represent that company it completes the standard form of license application furnished by the Insurance Department, and with a $2 fee paid by the appellee for the license, the Department at the request of the appellee issues a license to the agent authorizing him to represent appellee as its agent to do business on "classes of business that we write and that we are authorized to write in the State of Maryland".

The appellee offered in evidence its agency agreement with Webster. This agreement characterized Webster as "The Agent". It provided in part: "1. TERRITORY. The Company does hereby make, constitute and appoint the agent to represent it in the prosecution and conduct of its insurance business in the following territory, LINTHICUM HEIGHTS AND NEAR-BY VICINITY." This agreement also provided in part: "2. DUTIES. The agent is appointed for the purpose of procuring and transmitting applications for insurance of the type set forth in Paragraph 3 therein." (Paragraph 3, in turn, sets out the various types of insurance which are issued by the company.) "Collecting premiums on such applications and policies and paying to the company the premiums on the insurance so effected and performing such other duties as may be required by this agreement or by the company from time to time. The agent agrees to use his best ability and judgment in submitting risks to the company." This contract also contained the following provision: "13. LIMIT OF AU-

THORITY. The agent is in no case authorized to obligate the company beyond the limitations laid down in the written or printed instructions issued by the company nor to alter, modify, waive, or change any of the terms, rates or conditions of the company's policies or contracts." Hankins, the insured, had a fifth grade education. Harry O. Webster did not testify in this case.

The primary question for our decision in this case is whether the notice given by the insured to Harry O. Webster was notice to the insurer, the appellee here. As the insurance policy provides that "written notice shall be given  *  *  *  to the company or any of its authorized agents  *  *  *" and as the provision on the reverse side of the policy, providing that every accident must be reported to the home office of the company does not limit the notice to the home office of the company *only,* the question is narrowed as to whether Harry O. Webster was an "authorized agent" of the appellee at the time he received the notice of this accident.

In reviewing the authorities outside of this State on the question as to whom notice of an accident should be given under liability insurance policies the question is annotated at some length in 76 *A. L. R.* pages 28 to 37, and in 123 *A. L. R.* 952 and 953. It is there pointed out that the clauses in liability insurance policies are "considerably lacking in uniformity" as to whom notice of accidents shall be given. Some policies use the words "the company", others "the association", others "the insurer", others "at its home office". It is stated that the most common form provides that notice shall be given to "the company" or "its duly authorized agent". The policy here in question, of course, provides notice shall be given "to the company or any of its authorized agents". We have been unable to locate nor have we been referred to any case with the exact language as the one before us here with comparable facts and with a comparable contract between the insurance company and the agent who sold the policy. In *Pateras v. Standard Accident Ins. Co.,* 1929, 37 Ohio App. 383, 174 N. E. 620, 621, (auto-

mobile liability), the notice was required to be given to the company at its home office or its "duly authorized agent". It was there held that such an agent must be authorized, either expressly, or impliedly, to receive such notice on behalf of the insurer.

In the case of *New Amsterdam Casualty Co. v. Plaza Square Realty Co.*, 1935, 101 Ind. App. 174, 195 N. E. 289, the owner, landlord and tenant public liability policy provided that the assured should give immediate written notice of an accident and notice of any claim or suit resulting therefrom to the executive office of the company in Baltimore, Maryland, or to its authorized representative. The accident occurred on the 17th day of January, 1929. The insured had no notice of the accident until September 24, 1929. On September 27, 1929, it gave written notice of the accident to a brokerage agency through which the insurance was written. Suit was brought on November 14, 1929, and the insurance company was immediately notified by the insured of the filing of the suit. The insurance company contested the action on the policy because it claimed that the insured had failed to notify the appellant of the occurrence of the accident within a reasonable time after it occurred, claiming that it received no notice of the occurrence of the accident *until after September* 27, 1929. The Court in that case held that the notice given to the appellant, through the brokerage agency by which the insurance was written, *on* September 27, 1929, was timely.

Under the rules aiding application of standards of interpretations of contracts it is said in the *Restatement of the Law, Contracts*, Section 236, page 330: "d. Since one who speaks or writes, can, by exactness of expression, more easily prevent mistakes in meaning, than one with whom he is dealing, doubts arising from ambiguity of language are resolved against the former in favor of the latter. The other party will ordinarily be the promisee of the promise in question, so that it is generally true that the contract, if ambiguous, will be construed in favor of the promisee; but as the promisor is not invariably

the draftsman of his own promise the rule is more exactly that stated in Clause (d). (Clause (d) Where words or other manifestations of intention bear more than one reasonable meaning an interpretation is preferred which operates more strongly against the party from whom they proceed, unless their use by him is prescribed by law.) This rule finds frequent application in regard to policies of insurance, which are ordinarily prepared solely by the insurance company, and therefore, the words of the policies are construed most strongly against it. In some instances, however, the exact language not only of insurance policies, but of bills of lading and other contracts, is determined by statute. In such cases there is no reason for such an interpretation."

Code, 1947 Supplement, Article 48A, (Insurance), Section 82(b), gives the following definition of an agent: "An agent, other than a life insurance agent, is hereby defined to be an individual acting under written authority from any insurance company to solicit insurance and write and countersign policies of insurance and collect premiums therefor, and if so authorized by the company, to appoint and remove solicitors for any company for which he is licensed as agent, to report to and act through him." Section 82(d) defines a solicitor as follows: "A solicitor is hereby defined to be any individual acting under written authority from a company or duly licensed agent for any company other than a life insurance company or a branch office of a life insurance company, having authority to appoint solicitors, to solicit insurance for such company on behalf of the agent or company or branch office of the company appointing him, but without the power or authority to issue or countersign policies or otherwise bind the company for which he is licensed."

In the case before us the contract between Webster and the appellee, although not giving him the power to write and countersign policies of insurance, does specifically appoint him "The Agent" to represent it in the prosecution and conduct of its insurance business in a definite territory. The contract provides specifically as

his duties the transmitting of applications for insurance, collecting premiums thereon, and also provides that he shall "perform such other duties as may be required by this agreement or by the company from time to time." Furthermore, the above definitions of "an agent" and "a solicitor" was adopted by Chapter 895 of the Acts of 1945 and Webster's contract with the insurance company was continued after that Act was passed without change. This contract specifically named Webster as an "Agent", not as a "Solicitor".

Code, 1947 Supplement, Article 48A, Section 92B provides that before the Insurance Commissioner shall issue a license to act as agent, solicitor, broker or broker's solicitor, with certain exceptions not applicable here, he shall require the applicant to satisfy him that he has had sufficient education or experience in the insurance business and to satisfactorily pass such an examination relating to the kind of insurance to which the license may extend.

Turning to the Maryland authorities, in the case of *American Casualty Co. v. Ricas,* 179 Md. 627, 22 A. 2d 484, 486, the appellee, Ricas, on June 15, 1938, after purchasing an automobile, asked his friend, Wormser, who had written life insurance for him, to secure two policies of insurance, one covering fire and theft and one covering property damage and public liability. Wormser immediately called the "Insurance Service Corporation" and placed with it an application for two policies. This Insurance Service Corporation was the agent in Baltimore for a number of insurance companies, one of which was the appellant. The Insurance Service Corporation, through its secretary, on June 15, 1938, informed Wormser that the application for the property damage and public liability policies would be submitted to the appellant, the American Casualty Company, for its approval. The secretary also informed him that the acceptance of the policy would depend upon an investigation which would have to be made, and the policy would not be issued without the approval of the company. Wormser

admitted he had been told that the acceptance of the application depended upon an investigation but he did not so inform Ricas that his application had not at that time been accepted and left Ricas under the impression that the policy had been issued and he was insured. On June 15, 1938, the secretary of the Insurance Service Corporation submitted Ricas' application to the appellant. On June 17th the appellant acknowledged receipt of the application and advised that just as soon as the investigation had been completed the Insurance Service Corporation would be advised as to whether the application would be accepted. On the same day, June 17th, the appellee had an accident in which the automobile sought to be covered by the liability insurance was involved. The appellant had no notice of that accident and issued the policy on June 23, 1938. Wormser admitted that he was an independent solicitor and placed his business through agents of various companies. He had no contract of employment with the appellant or with any other company. When he turned in an application for insurance to an agent he never knew with which company his application would be placed. He also testified he "never had anything but a solicitor's license". This Court in finding that the proof in the case failed to show that the appellee dealt with Wormser in reliance upon any apparent authority as the agent of the appellant, said, 179 Md. at page 631, 22 A. 2d at page 487: "Courts everywhere have carefully considered various transactions between insurance companies and the public, and have fixed by settled rules of law, the respective rights, powers, authority and liabilities of all who in any way are connected with the business, whether principal, agent, broker or solicitor. The first uniform rule is that whether an agency in fact has been created, is to be determined by the relations of the parties as they exist under their agreements, or acts. The question ultimately is one of intention. *2 Am. Jur.* § 24, p. 26, *Restatement (Agency)* § 8. Authorities everywhere agree that an insurance agent, so far as the insurer is concerned, *is a person ex-*

*pressly or impliedly authorized to represent it in dealing with third parties in matters relating to insurance,* and an insurance solicitor, or broker, is one who acts as a middle man between the assured and the insurer, and who solicits insurance from the public under no employment from any special company, but having secured an order, either places the insurance with a company selected by the assured, or in the absence of any selection by him, then with a company selected by the broker. Ordinarily, the relation between the insured and the broker is that between principal and agent. An insurance broker is ordinarily employed by a person seeking insurance, and when so employed, is to be distinguished from the ordinary insurance agent, who is employed by insurance companies to solicit and write insurance by, and in the company." (Italics supplied here.)

The appellee here contends that in the instant case Webster was such an insurance broker or insurance solicitor. However, here, under the contract between Webster and the appellee, Webster was definitely named as the agent and was appointed as its *"agent to represent it in the prosecution and conduct of its insurance business"* in a named territory. This is very comparable to the italicized part of *American Casualty Co. v. Ricas, supra.* Here Webster was employed by the appellee and a definite rate of pay is specified in his contract of employment with the appellee as a special company. Here, plainly, Webster was not employed by Hankins but by the appellee and was not the agent of Hankins but was the agent of the appellee.

In the case of *Eureka-Maryland Assurance Corp. v. Samuel et al.,* 191 Md. 603, 62 A. 2d 622, this Court citing with approval the case of *Travelers' Ins. Co. v. Melman,* 147 Md. 459, 128 A. 125, again reiterated principles laid down therein. That latter case involved a life insurance policy and the question whether or not a statement made by the agent for the company to the applicant for insurance, that he need not hurry about paying the premium, that the agent would pay it and the applicant was pro-

tected, constituted tender to the company of the first premium and whether or not the policy was in effect. The Court there held that tender to the agent under the circumstances in that case constituted payment of the premium. The following quotation is from that case, 147 Md. at pages 468 and 469, 128 A. at page 128: "It is to be remembered that insurance companies must of necessity deal with the public in the transaction of the business in which they are engaged entirely through agents, and perhaps in a majority of cases through subordinate agents, certainly seldom with the principal officers of the company, and slightly less seldom with general managers or general agents. The subordinate agents thus dealing with the public are selected by the insurance companies, and by their actions must be held to bind their principals, not only within the scope of their real and actual authority, but also within the scope of their apparent authority. The enormous volume and variety of business engaged in by insurance companies at the present time, of necessity, requires them through their agents to deal with people of every condition and walk of life, many of them uneducated and illiterate, and, when an insurance agent solicits a contract of insurance from a prospective purchaser, he frequently has to explain, during the course of his negotiations, what insurance is, what the purpose of the contract is, what protection it affords to the insured and his family in case of death, the amount of and when the premiums are to be paid, and to impart much other information concerning the contract, in order that the prospective purchaser may understand and appreciate the benefits to be derived from a policy of insurance. The insured rarely comes in contact with any officer or high official of the company, and can only know what the company proposes, and what he himself is to do, by reason of what he is told by the agent. *It is therefore necessary, in order to insure fair, equitable, and just dealings between insurance companies and their policy holders, that the law of principal and agent be liberally interpreted by the courts in favor*

of the insured, and that the agent be held to have had all of the authority which it was apparent to the insured he possessed. * * * 'The insured deals with no one but the agent. The company cannot deal with its patrons in any other way. Justice and law therefore require that the company shall be held to sanction what the agent agrees to and upon which the insured relies. To allow the company to enforce a condition or forfeiture of the policy for a neglect to do that which the agent informs the insured shall not avoid the policy, would work the greatest injustice.'" (Italics supplied here.) See also *Goebel v. German American Ins. Co.*, 127 Md. 419, 427, 96 A. 627. We must note that in this case, Webster, the agent, told the Hankins boy, as hereinbefore set forth, when the accident was reported to him, that he would take care of it from there on. This is directly in line with the sentence last quoted.

In *American Casualty Co. v. Purcella et al.*, 163 Md. 434, 163 A. 870; 123 A. L. R. page 952 *supra,* one Mike Martirano was issued a liability insurance policy with the American Casualty Company. The policy provided: "XI. Reporting accidents and claims. The assured, upon the occurrence of any accident covered hereby, shall give immediate notice thereof, together with the fullest information respecting it then obtainable. He shall give like notice, with full particulars, of any claim growing out of such accident, and the assured shall forward to the company every summons or other process as soon as it shall have been served upon him." The policy of insurance was sold and issued to Martirano by Metzger and Holben, insurance agents, by whom the policy was "countersigned at Frostburg, Md., on the 25th day of February, 1929", to be effective to February 25, 1930. On November 10, 1929, Martirano had an accident with his automobile injuring his two guests therein. He went to Frostburg two days later and notified C. A. Holben of the firm of Metzger and Holben of the accident. "The appellant denied that any such notice was given or, conceding that it was, it did not, according to the testimony of Mar-

tirano, impart 'the fullest information respecting the accident then obtainable.' " The insurance company contended that the first notice of any kind received by that company or its agent was when Martirano, on December 13, 1929, went to the office of Metzger and Holben at Frostburg and delivered to Mr. Holben a letter of the attorney for the injured parties dated December 11, 1929, and copies of the summons and declarations in the suits against Martirano. These papers were forwarded by Metzger and Holben to the office of the appellant at Reading, Pennsylvania. On December 28th the insurance company denied liability under the policy because of the insured's failure to comply with the requirements of Section XI, *supra*. As the question came up on a demurrer prayer the Court assumed that two or three days after the accident Martirano did see Mr. Holben, the insured's agent in Frostburg, Maryland, and that he did say what he testified to having said. In that case in holding that notice to the representative of the insurance carrier two days after the accident was notice to the insurance carrier itself, this Court said: "In construing contracts of insurance, and particularly those conditions which must be observed by the respective parties to the contract, the courts make no distinction between fire, life, accident, and liability policies. In all of them the courts require evidence of substantial compliance on the part of the insured, or the one seeking indemnity, if the insured has failed to do what the policy provides. * * * Assuming that Martirano did omit some of the details of the accident, can the appellant complain? He testified that he personally told the agent from whom he bought the policy that he had had an accident and that Joe Purcella and Frank Sicola had been injured. The two days' delay, under the circumstances, is not unreasonable. * * * The purpose of the preliminary notice and the requirement of promptness are to enable the insurer to make an investigation when the facts are obtainable. It is not pretended that the insurer will determine its course solely on the statement of the insured. Assuming that Mar-

tirano told the insurer's agent what has been testified to, and we must assume what the demurrer prayers admit, can the appellant now question the omission of any details, or has it waived any of the deficiencies of the alleged preliminary notice? * * * In the instant case, the insured having personally advised the insurer's agent of the accident (there being no instructions in the policy as to the person to whom or the manner in which the notice should be given, with such facts as appear to have been testified to by him, if the agent did not request or demand more information than the insured then gave, if any information then obtainable was omitted, it was waived."

It is true that in the instant case Webster did not countersign the policy here in question. There was no question in *American Casualty Co. v. Purcella et al., supra,* as to whether Mr. Holben altered, modified, waived or changed any of the terms or agreements in the policy issued to Martirano. In the instant case Webster was not a mere rubber stamp for the insurance company. Apparently from the testimony of the manager of the Baltimore branch office of the appellee, he was solicited by the appellee and employed as a licensed agent "to represent it in the prosecution and conduct of its business" in a specified territory after passing an examination given by the insurance commissioner.

Of course, when the terms of a contract are clear and unambiguous courts have no right to make new contracts for the parties or ignore those contracts already made simply to avoid seeming hardships. Insurance contracts are construed with a view of arriving at the intention of the parties as gathered from all the instruments. When the language used in said contracts is free and clear from such ambiguities it is, of course, to be given its usual and ordinary significance, thereby carrying out the intent of the parties as thus expressed. *American Automobile Ins. Co. v. Fidelity & Casualty Co.,* 159 Md. 631, 636, 152 A. 523; *Joffe v. Niagara Fire Ins. Co.,* 116 Md. 155, 160, 81 A. 281, 51 L. R. A., N. S., 1047,

Ann. Cas. 1913C, 1217; *Miller v. Home Ins. Co.*, 127 Md. 140, 146, 96 A. 267 Ann. Cas. 1918E, 384; *Frontier Mortgage Corp. v. Heft,* 146 Md. 1, 12, 125 A. 772.

The language "any of its authorized agents" used in the liability insurance policy now before this Court is not free from ambiguity. In interpreting this language and in giving it its usual and ordinary significance, we must construe any doubts arising from the ambiguity of this language against the insurance company and in favor of the insured. *Restatement of Law, Contracts,* Section 236, page 330 *supra.* And we must bear in mind the rule that "It is therefore necessary, in order to insure fair, equitable, and just dealings between insurance companies and their policy holders, that the law of principal and agent be liberally interpreted by the courts in favor of the insured, and that the agent be held to have had all of the authority which it was apparent to the insured he possessed." *Travelers' Ins. Co. v. Melman,* 147 Md. 459, 468 and 469, 128 A. 125, 129, *supra.* Here, Webster told the son of the insured that he would take care of the case from there on. It was therefore apparent that Webster had this authority.

Construing the policy here in question and the contract between Webster and the insurance company in the light of those rules of construction, we are of opinion under the authorities hereinbefore recited that Harry O. Webster was an "authorized agent" of the appellee at the time he received the notice of the accident and that notice to him was notice to "an authorized agent". If the insurance company did not intend him to be so understood, it would have been very simple to have made such a provision in the policy and to have definitely designated the person to whom the notice of the accident should be sent and not leave that language in doubt.

As to the non-waiver agreement executed by the Hankins at appellee's office on April 28, 1947, which provided that the appellee might defend the suit without waiving any "provision, term, condition or limitation in the policy contained", but without requiring the appellee

to defend, this non-waiver agreement appears to have been without consideration on the part of the appellee. This was merely a promise on appellee's part, promising to do what it was already legally bound to do, in view of our decision in this case. *Royal Ins. Co. v. Drury,* 150 Md. 211, 232, 132 A. 635, 45 A. L. R. 582.

, In this case, as hereinbefore set forth, Webster received notice of the accident on August 26, 1946. Assuming that Webster was not the agent of the company for the purposes of receiving notice, (we having decided otherwise in this case), the notice was received at the Baltimore office on October 10, 1946. The appellee did not file the suit for an interpretation of the policy until December 3, 1947, over a year after its admitted notice. In the meantime, although not admitting liability under the policy and attempting to reserve all its rights thereto, it assumed control of the suits against the insured and had its attorney file pleas in the damage suits.

In the case of *Columbia Casualty Co. v. Ingram,* 154 Md. 360, 140 A. 601, the insurance policy provided that in case of an accident the assured should give prompt written notice with the fullest information obtainable at the time to one of the insurer's authorized agents. After the accident had been reported the insurer wrote a letter to the assured stating that the report of the accident and the transmission of the suit papers had been unduly delayed and they were accepting "under a full reservation" of the insurer's rights under the insurance contract. The letter concluded "we will proceed with an investigation of the facts in the case, but without waiving any of the said rights". The insurer claimed that it did not receive notice until ten days after the accident. Exclusive control of the case was retained by the insurer for a period of fifty-one days. It then wrote the insured a letter denying liability under the policy "by reason of the prejudice to our interests, through the delayed notice to us of the accident and the lack of co-operation on your part in connection with the matter". The Court in that case held that the insurer

was entitled to prompt notice of the accident and of the ensuing claim for damages, but that the assured had the right to be informed within a reasonable time as to whether the insurer intended to accept or disavow the duty of resisting or adjusting the claim. The record in that case showed no reason why a sufficient investigation of the facts could not have been made before the entry of an appearance for the defendant and the filing of the pleas, in the suit against the assured, became necessary. The Court further pointed out that if prejudice could result to the insurer from a delay of ten days in the receipt of the notice of the accident it was readily conceivable that the interest of the assured might be prejudiced by the insurer's delay for more than a month and a half in determining its attitude in regard to the question of its liability. The Court there affirmed the granting of the plaintiff's prayer submitting an instruction permitting the jury to infer a waiver of the notice on the part of the insurance company if they found certain facts.

Although it is not necessary that we pass upon whether the insurance company waived the alleged neglect of the insured to report the accident promptly, yet under the authority of the case of *Columbia Casualty Co. v. Ingram, supra,* the trial judge might well have decided that the long delay of the insurance company in determining its liability under the policy and in denying such liability amounted to a waiver of the provision in the policy requiring prompt notice.

In view of our finding in this case it is not necessary that we pass upon the other contentions of the appellants that other conduct of the insurance company was sufficient to constitute a waiver or to estop it from insisting on the notice provision.

The judgment will be reversed and the case will be remanded for the entry of a judgment declaring that the appellee is liable under the policy herein to the defendant, James Edward Hankins, and to all other persons cov-

88

ered by the said policy by reason of the accident mentioned herein as occurring on August 26, 1946.

*Judgment reversed, with costs, and case remanded for the entry of a judgment as herein set forth.*